1  IRELL & MANELLA LLP
   David Siegel (101355) (dsiegel@irell.com)
2  Daniel P. Lefler (151253) (dlefler@irell.com)
   Charles E. Elder (186524) (celder@irell.com)
3  Randall L. Jackson (244545) (rjackson@irell.com)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, CA 90067
   Telephone:  (310) 277-1010
5  Facsimile:  (310) 203-7199

6  John C. Hueston (164921) (jhueston@irell.com)
   Layn R. Phillips (103854) (lphillips@irell.com)
7  840 Newport Center Drive, Suite 400
   Newport Beach, California 92660-6324
8  Telephone:  (949) 760-0991
   Facsimile:  (949) 760-5200

9
   WILLIAMS & CONNOLLY LLP
10 Brendan V. Sullivan, Jr. (*Pro Hac Vice*)
   David D. Aufhauser (*Pro Hac Vice*)
11 725 Twelfth Street, N.W.
   Washington, D.C. 20005
12 Telephone:  (202) 434-5000
   Facsimile:  (202) 434-5029
13
   Attorneys for Defendant
14 Angelo Mozilo

15
                  UNITED STATES DISTRICT COURT
16
                 CENTRAL DISTRICT OF CALIFORNIA
17
                         WESTERN DIVISION
18

19 SECURITIES AND EXCHANGE          )  Case No. CV 09-03994 JFW (MANx)
   COMMISSION                       )
20                                  )  **DISCOVERY MATTER: JOINT**
              Plaintiff,            )  **STIPULATION REGARDING**
21                                  )  **ANGELO MOZILO'S MOTION TO**
         vs.                        )  **COMPEL RESPONSE TO**
22                                  )  **INTERROGATORY NO. 11**
   ANGELO MOZILO, DAVID             )
23 SAMBOL, AND ERIC SIERACKI,       )  Date:    June 8, 2010
                                    )  Time:    10:00 a.m.
24            Defendants.           )  Ctrm:    580
                                    )  Judge:   Hon. Margaret A. Nagle
25                                  )
                                    )  Discovery Cut-Off:  August 2, 2010
26 _____ )  Pretrial Conference: October 1, 2010
                                       Trial date:          October 19, 2010
27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

## TABLE OF CONTENTS

Page

I.    INTRODUCTORY STATEMENTS ................................................................ 1

    A.    Mr. Mozilo's Introductory Statement ................................................ 1

    B.    SEC's Introductory Statement ........................................................... 3

II.   DISCOVERY RESPONSES AT ISSUE ........................................................ 4

    A.    Verbatim Statement of Discovery Responses .................................... 5

III.  Mr. Mozilo's Contentions and Points and Authorities .................................. 6

    A.    The Commission's Claim That Countrywide "Hid" The Risks Of Its Mortgages From Investors Is Contradicted By The Extensive Disclosures In The Prospectus Supplements ............... 7

    B.    The Information Sought By Interrogatory No. 11 Is Plainly Relevant ........................................................................................... 11

    C.    The SEC's Prior Answers To Interrogatory No. 11 Are Non-Responsive And Evasive .......................................................... 12

    D.    The SEC's Proffered Justifications For Refusing To Answer Interrogatory No. 11 Are Meritless ...................................... 13

    E.    Conclusion ...................................................................................... 14

IV.   SEC'S CONTENTIONS AND POINTS AND AUTHORITIES ................. 14

    A.    The SEC Answered Interrogatory No. 11 To the Best of Its Ability ............................................................................................. 15

    B.    Interrogatory No. 11 Implicitly Requires So Many Steps of Analysis of Unspecified, Disparate Information that It Could Not, Without Qualification, Be Answered ............................. 16

    C.    Unable to Meaningfully Answer the Thousands of Disparate Questions Implicitly Contained in Interrogatory No. 11, the SEC Answered As Best It Could. ..................................... 19

    D.    The SEC Properly Objected to Mozilo's Interrogatory No. 11 As Vague, Ambiguous and Compound .......................................... 20

    E.    Conclusion ...................................................................................... 21

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1      Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule
2  37-2, Defendant Angelo Mozilo ("Mr. Mozilo") and Plaintiff Securities and
3  Exchange Commission ("SEC") submit the following Joint Stipulation Regarding
4  Mr. Mozilo's Motion to Compel Response to Interrogatory No. 11.  The parties have
5  attempted unsuccessfully to resolve their dispute, and therefore respectfully seek the
6  assistance of the Court.

7  **I.      INTRODUCTORY STATEMENTS**

8       **A.     Mr. Mozilo's Introductory Statement**

9      This is an alleged securities fraud case brought by the Securities and
10 Exchange Commission (the "SEC" or the "Commission") against three former
11 senior executives of Countrywide Financial Corporation, including Angelo Mozilo,
12 its former Chief Executive Officer and the moving party here.  Until its acquisition
13 by Bank of America in 2008, Countrywide was one of the largest originators of
14 home mortgages in the country.  One of the SEC's principal liability theories is that
15 defendants "hid from investors that Countrywide, in an effort to increase market
16 share, engaged in an unprecedented expansion of its [mortgage loan] underwriting
17 guidelines from 2005 and into 2007."  Cmplt. ¶ 4.[1]  The SEC argues that because the
18 risk characteristics of Countrywide-originated loans were allegedly "hidden,"
19 investors were misled about the risks of investing in the Company.

20     At trial, the SEC will not be able to prove its allegation that Countrywide "hid
21 from investors" the risk characteristics of the loans it originated.  The evidence will
22 show that Countrywide disclosed comprehensive information about loan risk
23 attributes in many different ways in many different public fora.  Among the most
24 important of these disclosures were prospectus supplements that were filed by
25 Countrywide subsidiaries – with the SEC, ironically – when those subsidiaries sold

26

27     [1] The Commission has alleged other theories of falsity, most notably that
   Countrywide did not adequately disclose the risks of a loan portfolio held for
28 investment at its banking subsidiary.  These other theories are not relevant to this
   motion.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 1 -

1  mortgages into the secondary mortgage market in the form of mortgage-backed

2  securities.  These prospectus supplements – and there are hundreds of them during

3  the relevant period – disclosed loan-level details concerning key risk characteristics

4  of the mortgages, including credit bureau risk scores,[2] documentation levels, loan-

5  to-value ratios, and geographical distribution.  Thus, the very information that the

6  SEC contends was "hidden from investors" – information about the risk

7  characteristics of Countrywide-originated mortgages – was in fact publicly disclosed

8  in detailed securities filings that were (and still are) available on the SEC's own

9  website.

10        The discovery dispute currently before the Court is based on one simple

11  interrogatory.  Interrogatory No. 11 asks the SEC whether it contends that the

12  information in the prospectus supplements was not reflected in Countrywide's stock

13  price.  Mr. Mozilo asks this question because under the efficient market theory – a

14  theory the SEC firmly embraces in other contexts – it is commonly understood that

15  all publicly available information is reflected in the prices of securities that trade in

16  open and efficient markets.

17        The answer to Interrogatory No. 11 is plainly relevant in this case.  If the

18  Commission acknowledges that the prospectus supplement information was

19  reflected in Countrywide's stock price, then certain legal defenses are potentially

20  available.  Indeed, it is difficult to see how the Commission could persist in arguing

21  that investors were misled about the supposedly undisclosed "expansion of

22  [Countrywide's] underwriting guidelines from 2005 and into 2007," Cmplt. ¶ 4, if it

23  admits that the loan attribute information contained in the prospectus supplements

24  was reflected in the Company's stock price.  Alternatively, if the SEC intends to

25  argue that the publicly available information in the prospectus supplements was not

26

27  _____

28    [2] Credit bureau risk scores (such as FICO scores) are numerical ratings, generally between 250 and 900, that are commonly used as a factor in assessing borrower creditworthiness.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership including
Professional Corporations

2236492

- 2 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1  reflected in Countrywide's stock price, then defendants are entitled to learn the basis

2  for that position as they prepare their case for trial.

3      Notwithstanding the plain relevance of the information sought by

4  Interrogatory No. 11, the SEC has refused to provide a responsive answer. Since the

5  Interrogatory requests information that is plainly within the proper scope of

6  discovery, this motion to compel should be granted.

7      **B.      SEC's Introductory Statement**

8      Defendant Angelo Mozilo, the former CEO of Countrywide Financial

9  Corporation ("Countrywide"), has propounded an impermissibly vague and

10 unintelligibly compound interrogatory that taken on its face would require the

11 Commission to guess at what information is encompassed by the phrase "loan

12 attributes" as it relates to what Mozilo himself acknowledges are over 800 separate

13 prospectus supplements, released by four different entities, and then perform an

14 analysis of the market's reaction to those innumerable unspecified pieces of

15 information, at different times over a four year period. Despite these fundamental

16 flaws in Mozilo's Interrogatory No. 11, the SEC did *not* refuse to answer the

17 Interrogatory, but instead answered to the best of its ability. Because Mozilo does

18 not like the SEC's answer, he brings the instant motion.

19     Mozilo and his co-defendants, the former Chief Operating and Chief Financial

20 Officers of Countrywide made false and misleading statements and omissions in

21 2005, 2006, and 2007 in connection with Countrywide's Forms 10-Q and 10-K, in

22 earnings calls and meetings with analysts, and in Countrywide's 2006 and 2007

23 securities offerings. Specifically, the SEC's complaint alleges that Mozilo

24 recklessly failed to disclose critical facts about Countrywide's deteriorating

25 underwriting quality, his knowledge that borrowers and/or brokers were taking

26 advantage of that laxity to commit fraud, and his grave concern that Countrywide's

27 defaults and delinquencies would rise as a result of these factors and adversely

28 affect Countrywide.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 3 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1   In defense of these allegations, Mozilo apparently intends to assert that
2   because certain characteristics of some of the loans originated by Countrywide were
3   disclosed in piecemeal fashion in literally hundreds of prospectus supplements
4   issued, not by Countrywide and not in reference to Countrywide's stock, but by four
5   indirect subsidiaries with arcane names in reference to esoteric mortgage-backed
6   debt securities, he could not have misled anyone trading Countrywide's stock.  In
7   support of his theory, Mozilo attempts to require the SEC to analyze the speed and
8   degree of absorption by the market for Countrywide's common stock of thousands
9   of individual micro-pieces of information buried in filings related to a totally
10  different class of securities issued by another issuer.  Mozilo sought to avoid the
11  inherently multi-faceted nature of such an inquiry by impermissibly seeking,
12  through one dramatically over-simplified interrogatory, to place upon the SEC the
13  burden of parsing through each of thousands of unspecified pieces of information
14  about thousands of loans contained in each of hundreds of prospectus supplements
15  issued at various points during a four year period, and then to speculate as to
16  whether and how quickly investors in Countrywide's common stock fully and
17  completely absorbed and understood each and every one of those pieces of
18  information.  This is simply too much and too varied a degree of information to be
19  obtained through a single comprehensible interrogatory.

20  **II.   DISCOVERY RESPONSES AT ISSUE**

21          In accordance with Local Rule 37-2.1, each discovery request and response at
22  issue is provided below verbatim.  By way of background, Mr. Mozilo propounded
23  the Interrogatory on February 8, 2010 and the Commission served its initial
24  response on March 24, 2010.  Declaration of Daniel P. Lefler ("Lefler Decl.") ¶ 2.
25  The parties met and conferred in person on April 14 and the Commission agreed to
26  provide a supplemental response, which it did on April 27, 2010.  *Id.* ¶ 3.
27  Thereafter, the parties exchanged further meet-and-confer correspondence but were
28  unable to reach agreement.  *Id.* ¶¶ 4-6.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 4 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

A.   **Verbatim Statement of Discovery Responses**

**INTERROGATORY NO. 11**:

For the period 2004 through 2007, do you contend that the price of Countrywide common stock did not reflect the information about loan attributes that was disclosed in prospectus supplements filed by CWABS, Inc., CWALT, Inc., CWHEQ, Inc., and CWMBS, Inc.?

**RESPONSE TO INTERROGATORY NO. 11**:

The Commission objects to this Interrogatory as compound. The Commission also objects to this Interrogatory to the extent it seeks information protected by the attorney work-product doctrine and the attorney-client privilege, the law enforcement privilege, and/or the deliberative process privilege.

Subject to and without waiving the foregoing objections, the Commission responds as follows:

The Commission contends that the share price of Countrywide's common stock from 2005 through 2007 did not reflect the material negative information regarding Countrywide's loans underwriting set forth in the Commission's Responses to Interrogatories 2, 3, and 5 herein, which responses are incorporated by reference.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11**:

The Commission objects to this Interrogatory on the grounds that it is vague, ambiguous, and compound.  The Interrogatory purports to require the Commission to provide a single response to a question that [sic] about unspecified "information about loan attributes" in potentially hundreds of unspecified prospectus supplements issued for numerous offerings over a three year period. The Commission also objects to this Interrogatory to the extent it seeks information protected from production by the attorney work-

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 5 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1   product doctrine and the attorney-client privilege, the law enforcement

2   privilege, and/or the deliberative process privilege.

3          Subject to and without waiving the foregoing objections, and to

4   the extent that the Interrogatory intends to inquire about the summary

5   loan pool information contained in the prospectus supplements filed

6   by CWABS, Inc., CWALT, Inc., CWHEQ, Inc., and CWMBS, Inc.

7   the Commission responds as follows:

8          The Commission contends that the share price of Countrywide's

9   common stock did not reflect at all times in the referenced period the

10  material negative information regarding Countrywide's loans

11  underwriting set forth in the Commission's Responses to

12  Interrogatories 2, 3, and 5, which responses are incorporated by

13  reference, and that the prospectus supplements for CWABS, Inc.,

14  CWALT, Inc., CWHEQ, Inc., and CWMBS, Inc. were insufficient to

15  cure those material misrepresentations and omissions.

16  **III.    Mr. Mozilo's Contentions and Points and Authorities**

17          Discovery is permitted into "any nonprivileged matter that is relevant to any

18  party's claim or defense." FED. R. CIV. P. 26(b)(1); *Nat'l Acad. of Recording Arts &*

19  *Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678, 680 (C.D. Cal. 2009).  The

20  burden is on the SEC, as the party opposing discovery, to demonstrate that

21  discovery should not be allowed. *See Blankenship v. Hearst Corp.*, 519 F.2d 418,

22  429 (9th Cir. 1975).  Furthermore, "[o]nce a proper discovery request has been

23  seasonably propounded, we will not allow a party sentiently to avoid its obligations

24  by filing misleading or evasive responses...." *Nat'l Acad.*, 256 F.R.D. at 680

25  (quoting *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 929 (1st Cir. 1988)).

26          The information sought by this motion is plainly relevant, as it goes to the

27  core of one of the SEC's principal liability theories.

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 6 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

A. **The Commission's Claim That Countrywide "Hid" The Risks Of Its Mortgages From Investors Is Contradicted By The Extensive Disclosures In The Prospectus Supplements**

The heart of this case is the SEC's claim that Countrywide misled investors about the risks of the mortgages it originated. At the very beginning of its Complaint, the Commission alleges that defendants "hid from investors that Countrywide, in an effort to increase market share, engaged in an unprecedented expansion of its underwriting guidelines from 2005 and into 2007." Cmplt. ¶ 4; *see also id.* ¶ 14 (defendants "hid from investors that Countrywide was engaged in an effort to increase market share and sustain revenue generation through unprecedented expansions of its underwriting guidelines, taking on ever-increasing credit risk"); *id.* ¶ 27 ("Countrywide's periodic filings concealed the unprecedented expansion of underwriting guidelines and the attendant increased credit risk"). The SEC's case includes variations on this theme, including allegations that Countrywide routinely originated loans as "exceptions" to guidelines and that its statements about the quality of its underwriting processes were misleading. Cmplt. ¶¶ 28-30.

At trial, the SEC will not be able to prove that Countrywide "hid" the risk characteristics of its loans. The evidence will clearly show that the Company publicly disclosed extensive factual information about its mortgage originations in many fora, including SEC filings, press releases, investor conference calls, investor conferences, the Company's website and its marketing materials.

This motion focuses on one of these channels of communication: the prospectus supplements for the sale of mortgage-backed securities. Countrywide's business model was to sell nearly all of the mortgages it originated to subsidiaries and/or affiliates who packaged those loans in MBS for sale to investors in the secondary mortgage market. When a Company subsidiary issued a mortgage-backed security, it was required by SEC regulations – 17 C.F.R. § 229.1100 *et seq.* – to prepare and publicly file with the Commission a prospectus supplement containing

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

1  detailed information about the mortgages.[3]  During the period at issue in this case,

2  Countrywide's subsidiaries filed approximately 803 of these disclosure documents.

3  Lefler Decl. ¶ 8.  These documents were (and are) publicly available on the SEC's

4  own "EDGAR" website.

5       These prospectus supplements disclosed precisely the information that the

6  Commission alleges was "hidden" from Countrywide's investors.  For example, a

7  mid-2006 prospectus disclosed that the pool of mortgages in the security included

8  borrowers with "impaired credit histories, which may include a record of major

9  derogatory credit items such as outstanding judgments or prior bankruptcies."  Lefler

10  Decl., Ex. 4 at 14.   The prospectus also gave details about Countrywide's

11  "alternative sets of underwriting criteria" including its reduced documentation

12  programs, such as the "Stated Income Program where the amount of income is not

13  verified." *Id.* at 17.  In discussing Countrywide's underwriting guidelines, the

14  disclosure specifically explained that borrowers who qualified under the guidelines

15  had characteristics, "which would not satisfy more traditional underwriting

16  guidelines." *Id.*  The SEC filing also contained a discussion of how it "expected that

17  a significant number of the mortgage loans [in the securitization] will have been

18  originated based on underwriting exceptions," and that "the mortgage loans in the

19  mortgage pool are likely to experience rates of delinquency, foreclosure and

20  bankruptcy that are higher, and that may be substantially higher, than those

21  experienced by mortgage loans underwritten in a more traditional manner." *Id.* at 14.

22       In addition to the narrative descriptions of the underwriting criteria applied to

23  the mortgages contained in the pool, each prospectus supplement also disclosed

24  loan-level details concerning key risk characteristics of the mortgages, including

25

26       [3] The Countrywide subsidiaries that issued the mortgage backed securities

27  were called CWABS (which securitized credit blemished loans), CWALT (alternative loans, including pay-option and interest only loans), CWHEQ (home

28  equity lines of credit) and CWMBS (pay-option and fixed-rate non-conforming loans).  These are the entities referred to in Interrogatory No. 11.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

credit bureau risk score, documentation levels, loan-to-value ratio, and geographical distribution, as follows:

CREDIT BUREAU RISK SCORES(1)

| RANGE OF CREDIT BUREAU RISK SCORES | NUMBER OF STATISTICAL MORTGAGE LOANS | AGGREGATE PRINCIPAL BALANCE OUTSTANDING | % OF STATISTICAL MORTGAGE LOANS | AVERAGE PRINCIPAL BALANCE OUTSTANDING ($) | WEIGHTED AVERAGE CURRENT MORTGAGE RATE (%) | WEIGHTED AVERAGE REMAINING TERM TO MATURITY (MONTHS) | WEIGHTED AVERAGE CREDIT BUREAU RISK SCORE | WEIGHTED AVERAGE ORIGINAL COMBINED LOAN-TO-VALUE RATIO (%) |
|---|---|---|---|---|---|---|---|---|
| 781 - 800 ................... | 8 | $ 364,767 | 0.23% | 45,596 | 11.181 | 178.68 | 791 | 98.5 |
| 761 - 780 ................... | 20 | 1,276,916 | 0.81 | 63,846 | 11.342 | 178.79 | 771 | 99.0 |
| 741 - 760 ................... | 32 | 1,897,150 | 1.21 | 59,286 | 11.419 | 179.01 | 750 | 100.0 |
| 721 - 740 ................... | 63 | 3,318,065 | 2.11 | 52,668 | 11.114 | 179.20 | 730 | 99.5 |
| 701 - 720 ................... | 110 | 6,364,934 | 4.05 | 57,863 | 11.240 | 181.09 | 710 | 99.4 |
| 681 - 700 ................... | 239 | 13,361,808 | 8.50 | 55,907 | 11.208 | 180.39 | 689 | 99.3 |
| 661 - 680 ................... | 393 | 19,925,800 | 12.67 | 50,702 | 11.424 | 180.05 | 670 | 98.9 |
| 641 - 660 ................... | 543 | 25,879,479 | 16.46 | 47,660 | 11.714 | 181.41 | 649 | 98.0 |
| 621 - 640 ................... | 672 | 30,533,541 | 19.41 | 45,437 | 11.869 | 180.79 | 630 | 97.5 |
| 601 - 620 ................... | 605 | 24,568,537 | 15.62 | 40,609 | 11.959 | 183.18 | 610 | 95.4 |
| 581 - 600 ................... | 620 | 23,004,137 | 14.63 | 37,103 | 12.126 | 182.61 | 590 | 95.8 |
| 561 - 580 ................... | 162 | 5,966,203 | 3.79 | 36,828 | 12.173 | 185.95 | 572 | 88.5 |
| 541 - 560 ................... | 18 | 647,331 | 0.41 | 35,963 | 12.167 | 190.11 | 554 | 96.0 |
| 521 - 540 ................... | 3 | 139,936 | 0.09 | 46,645 | 12.223 | 195.53 | 527 | 87.2 |
| 500 or Less ................. | 1 | 19,962 | 0.01 | 19,962 | 12.500 | 179.00 | 480 | 75.3 |
| Total ................... | 3,489 | $157,268,567 | 100.00% | | | | | |

ORIGINAL COMBINED LOAN-TO-VALUE RATIOS(1)

| RANGE OF ORIGINAL COMBINED LOAN-TO-VALUE RATIOS (%) | NUMBER OF STATISTICAL MORTGAGE LOANS | AGGREGATE PRINCIPAL BALANCE OUTSTANDING | % OF STATISTICAL MORTGAGE LOANS | AVERAGE PRINCIPAL BALANCE OUTSTANDING ($) | WEIGHTED AVERAGE CURRENT MORTGAGE RATE (%) | WEIGHTED AVERAGE REMAINING TERM TO MATURITY (MONTHS) | WEIGHTED AVERAGE CREDIT BUREAU RISK SCORE | WEIGHTED AVERAGE ORIGINAL COMBINED LOAN-TO-VALUE RATIO (%) |
|---|---|---|---|---|---|---|---|---|
| 0.01 - 50.00................. | 12 | $ 378,106 | 0.24% | 31,509 | 12.108 | 175.93 | 604 | 33.9 |
| 50.01 - 55.00................. | 10 | 355,768 | 0.23 | 35,577 | 12.398 | 200.93 | 608 | 53.0 |
| 55.01 - 60.00................. | 25 | 1,134,910 | 0.72 | 45,396 | 11.700 | 178.53 | 613 | 57.6 |
| 60.01 - 65.00................. | 21 | 911,184 | 0.58 | 43,390 | 11.759 | 191.44 | 609 | 62.8 |
| 65.01 - 70.00................. | 31 | 1,298,830 | 0.83 | 41,898 | 11.437 | 192.95 | 611 | 67.7 |
| 70.01 - 75.00................. | 49 | 2,188,788 | 1.39 | 44,669 | 11.955 | 183.47 | 606 | 72.8 |
| 75.01 - 80.00................. | 81 | 3,160,064 | 2.01 | 39,013 | 12.176 | 195.28 | 603 | 78.2 |
| 80.01 - 85.00................. | 89 | 4,088,058 | 2.60 | 45,933 | 11.575 | 192.18 | 616 | 83.2 |
| 85.01 - 90.00................. | 113 | 4,559,846 | 2.90 | 40,353 | 11.349 | 189.73 | 627 | 88.9 |
| 90.01 - 95.00................. | 86 | 3,972,599 | 2.53 | 46,193 | 11.541 | 180.05 | 644 | 94.3 |
| 95.01 - 100.00................. | 2,972 | 135,220,415 | 85.98 | 45,498 | 11.754 | 180.50 | 644 | 99.9 |
| Total................... | 3,489 | $157,268,567 | 100.00% | | | | | |

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 9 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

*Id.* at 25, 23.  In short, the extensive factual information about Countrywide mortgages that was publicly disclosed in the prospectus supplements plainly contradicts the SEC's allegations that risk characteristics of Countrywide loans were "hidden" from investors.

This contradiction is important because it is commonly accepted in the case law (and elsewhere) that the prices of securities traded in efficient markets reflect <u>all</u> publicly available information.  This proposition was directly endorsed by the United States Supreme Court over twenty years ago in *Basic v. Levinson*, 485 U.S. 224 (1988), when it adopted the fraud-on-the-market theory – a legal rule excusing proof of individual reliance by all class members in a securities class action because any fraud by the company will be reflected in its stock price.  The Court observed in *Basic* that "[r]ecent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information, and, hence, any material misrepresentations."  485 U.S. at 246; *see also Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 976-77 (9th Cir. 1999) ("[u]nder the fraud-on-the-market theory, the market incorporates into a stock's price all publicly available information").  Not only has the efficient market theory been accepted by the courts, but the SEC itself has long endorsed the theory both when performing its function as a rule maker for the securities markets,[4] and as

---

[4] *See, e.g.*, SEC Release No. 34-61595 at 10 n.18, "Amendments to Regulation SHO," March 10, 2010, *available at* http://www.sec.gov/rules/final/2010/34-61595.pdf (explaining in adopting rule regarding restrictions on short selling that "[w]here we use the terms 'market efficiency' and 'price efficiency' in this adopting release we are using terms of art as used in the economic literature proceeding under the 'efficient markets hypothesis,' under which financial prices are assumed to reflect all available information and accordingly adjust quickly to reflect new information"); SEC Release No. 33-6499, "Timely Reporting – Final Amendment of Rule and Form," November 17, 1983 ("Forms S-3 and F-3 recognize the applicability of the efficient market theory to those companies which provide a steady stream of high quality corporate information to the marketplace and whose corporate information is broadly disseminated.  Information about these companies is constantly digested and synthesized by financial analysts, who act as essential conduits in the continuous flow of information to investors, and is broadly disseminated on a timely basis by the financial press and other participants in the marketplace"); *see also* SEC Release No. 34-58288 at 6, "Commission Guidance on the Use of Company Websites," effective August 7, 2008, *available at*

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 10 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1   an advocate in the courts.  *See* SEC amicus curiae brief in *In re Worldcom, Inc.*

2   *Securities Litigation*, 2004 WL 1432278 (April 19, 2004) (arguing that statements in

3   securities analyst reports should be actionable in private class actions because the

4   Supreme Court when adopting the fraud-on-the-market theory in *Basic* "referred to

5   available material information regarding the company and its business, without any

6   limitation based on the source of the information [and] noted that the economic

7   studies that led courts to adopt the theory tended to confirm that the market price of

8   shares traded on well-developed markets reflects all publicly available information")

9   (internal quotations and ellipses omitted).

10          The discovery request before the Court – Interrogatory No. 11 – simply asks

11   for the Commission's position about whether the loan attribute information that was

12   publicly available through the prospectus supplements was incorporated in

13   Countrywide's stock price.

14          **B.      The Information Sought By Interrogatory No. 11 Is Plainly**

15                  **Relevant**

16          The SEC's answer to Interrogatory No. 11 is plainly relevant information.  If

17   the SEC acknowledges – as it should – that the information contained in the

18   prospectus supplements was reflected in Countrywide's stock price, potential legal

19   defenses arise.  For example, this answer would potentially provide a complete

20   defense to the claim that Mr. Mozilo and the other defendants "hid from investors"

21   that Countrywide engaged in "unprecedented expansions of its underwriting

22   guidelines."  Cmplt. ¶ 14;  *cf. Heliotrope*, 189 F.3d at 975-76 ("If the market has

23   become aware of the allegedly concealed information, the facts allegedly omitted by

24   the defendant would already be reflected in the stock's prices and the market will not

25   be misled.") (internal quotations and citations omitted).  At a minimum,

26   http://www.sec.gov/rules/interp/2008/34-58288.pdf ("[a] reporting company's
27   reports that it files under the Exchange Act and other publicly available information
     form the basis for the market's evaluation of the company and the pricing of its
28   securities, and investors in the secondary market use that information in making
     their investment decisions").

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 11 -

1   acknowledgement that the prospectus supplement information was reflected in

2   Countrywide's stock price would enhance a scienter defense, since the extensive

3   disclosure of these loan level details would be inconsistent with any intent to

4   mislead.

5       Furthermore, clarity on this issue should streamline the trial.  In opposing

6   Mr. Mozilo's Motion to Dismiss last year, the SEC argued that the information

7   disclosed in the prospectus supplements was not relevant because it was not "readily

8   available" to purchasers of Countrywide stock.  Opp'n at 19.  Acknowledgement that

9   the prospectus supplement information was – consistent with the efficient market

10  theory – reflected in Countrywide's share price should obviate any further argument

11  along these lines.

12      Alternatively, if the SEC denies that the information in the prospectus

13  supplements was reflected in Countrywide's stock price, then defendants will need to

14  find out the evidentiary basis for that contention so that they can prepare their case

15  for trial.

16      In either event, the answer to Interrogatory No. 11 is plainly relevant, and

17  therefore this motion should be granted.

18      **C.    The SEC's Prior Answers To Interrogatory No. 11 Are Non-**

19          **Responsive And Evasive**

20      Neither of the responses that the SEC has provided thus far actually answers

21  the question posed in Interrogatory No. 11.  The Commission's first response simply

22  stated that "the share price of Countrywide's common stock from 2005 through

23  2007 did not reflect the material negative information regarding Countrywide's

24  loans underwriting" that the Commission contends was misrepresented or omitted.

25  That answer is non-responsive.  The question is whether the information that <u>was</u>

26  <u>disclosed</u> was reflected in Countrywide's stock price.

27      The Commission's supplemental response is simply a variation on the first

28  answer's non-responsive theme.  The supplemental response states that "[t]he

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 12 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1  Commission contends that the share price of Countrywide's common stock did not

2  reflect at all times in the referenced period the material negative information

3  regarding Countrywide's loans underwriting [alleged elsewhere by the SEC], and

4  that the prospectus supplements for CWABS, Inc., CWALT, Inc., CWHEQ, Inc.,

5  and CWMBS, Inc. were insufficient to cure those material misrepresentations and

6  omissions." Again, the question is not whether the SEC concedes that

7  Countrywide's share price was accurate at all times.

8         The question posed in Interrogatory No. 11 is simply whether the SEC

9  acknowledges that the prospectus supplements represent a category of information

10  that was reflected in Countrywide's stock price. Through its reference to other

11  matters, the SEC has avoided answering this direct question.

12  **D.**     **The SEC's Proffered Justifications For Refusing To Answer**

13            **Interrogatory No. 11 Are Meritless**

14         In its meet and confer letter dated May 4, the SEC offered two justifications

15  for its refusal to answer Interrogatory No. 11, neither of which has merit.

16         First, the Commission argued that the Interrogatory is vague and ambiguous

17  because the Commission cannot tell which prospectus supplements the Interrogatory

18  refers to. Lefler Decl., Ex. 3. ("[t]his Interrogatory impermissibly requires the

19  Commission to (1) determine what specific prospectus supplements this

20  Interrogatory refers to; [and] (2) ascertain which of them were actually filed and

21  made publicly available on what dates during the three year time period...."). This

22  argument borders on the frivolous. The Interrogatory refers to the prospectus

23  supplements <u>filed with the SEC</u> by the four Countrywide securitization subsidiaries.

24  The SEC can identify all of these prospectus supplements simply by looking at its

25  own website.

26         Second, the SEC complains that there is so much information in the

27  prospectus supplements that the Interrogatory is impermissibly compound. *Id.* ("this

28  Interrogatory impermissibly requires the Commission to . . . review literally

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 13 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1   thousands of pages to determine what 'information regarding loan attributes' is

2   contained in each prospectus supplement").  While it is certainly true that the

3   prospectus supplements contain a mountain of information, this does not render the

4   Interrogatory ambiguous or compound.  The Commission has advanced the theory

5   that Countrywide misled investors by failing to disclose an evolution towards riskier

6   mortgage underwriting during the 2004 through 2007 period.  This argument is

7   based on the overall trend in loan underwriting, not specific examples of specific

8   guideline changes at specific moments in time concerning specific loan products.

9   The Interrogatory is framed at the same level of generality as the Commission's

10  liability theory:  it asks whether the market price of Countrywide's securities

11  reflected the public information about the risk characteristics of Countrywide loans

12  contained in the prospectus supplements – information that subsumes the alleged

13  trend toward riskier underwriting that forms the basis for the Commission's liability

14  theory.  In short, the Commission's complaint that Interrogatory No. 11 is

15  insufficiently specific is wrong.

16       **E.**    **Conclusion**

17       Interrogatory No. 11 seeks relevant information that is properly discoverable.

18  For all of the foregoing reasons, Mr. Mozilo respectfully requests that this Court

19  order the SEC to provide a proper response to his Interrogatory No. 11.

20  **IV.**   **SEC'S CONTENTIONS AND POINTS AND AUTHORITIES**

21       While it is true that a party has an obligation to respond to an interrogatory,

22  the SEC has done so here, and Mozilo does not contend otherwise.  The fact of the

23  matter is that Mozilo does not like the SEC's answer since it is apparently

24  inconsistent with the defenses he wishes to assert.  As a result, he attempts to

25  characterize the SEC's good faith attempt to provide him the information he seeks to

26  the extent it reasonably can, as "evasive," and then states the uncontroversial

27  proposition that a party should not be allowed to avoid its discovery obligations

28  using evasive responses.  Neither of the cases that Mozilo cites for this proposition

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 14 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1   actually deals with an instance where a party attempted in good faith, as the SEC has

2   here, to interpret the interrogatory so that it could provide a truthful substantive

3   response and then provided such a response. *See National Academy of Recording*

4   *Arts & Sciences, Inc. v. On Point Events, LP*, 256 F.R.D. 678 (C.D. Cal. 2009)

5   (compelling responses where party objected instead of answering subject

6   interrogatories and where court found the objections insufficient); *Anderson v.*

7   *Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1988) (remanding for additional proceedings

8   regarding intent of concealing party and effect of concealed report where plaintiff

9   sought relief from judgment for discovery misconduct).  Mozilo may wish that the

10  SEC's response to Interrogatory No. 11 had been different, but that does not make it

11  evasive.

12      **A.**   **The SEC Answered Interrogatory No. 11 To the Best of Its Ability**

13          Mozilo styles his motion as one to "Compel Response to Interrogatory No.

14  11."  However, the SEC has responded, and substantively so.  In his argument,

15  Mozilo portrays Interrogatory No. 11 as a simple question which essentially equates

16  to whether the SEC contends that the market for Countrywide's common stock was

17  efficient.  If this was what Mozilo wanted to know, he should have asked that

18  question.  Instead, Mozilo asked something very different – he asked the

19  Commission to provide a single response as to whether each and every piece of

20  information, no matter how small, related to thousands of loans, contained in

21  literally hundreds of prospectus supplements was reflected in Countrywide's stock

22  price, apparently at all times throughout a four-year period.  For a variety of reasons,

23  such a question is impossible to answer meaningfully *in toto*.  As a result, the SEC

24  answered the Interrogatory as best it could, and provided responsive information

25  about its specific contentions.  Where an interrogatory is vague, the responding

26  party may qualify his answer to clarify its understanding of the question.  *See*

27  *Stinson v. Sirleff*, No. 92 Civ. 6059 (SWK), 1994 WL 406344 at *1 (S.D.N.Y. Aug.

28  1, 1994) (ordering defendants to provide "responses, rather than objections" to

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

- 15 -

2236492

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1 | interrogatories, but indicating that the defendants "may, in cases of doubt, qualify
2 | their answers by setting out their understanding of what the question calls for").

3 |   **B.**   **Interrogatory No. 11 Implicitly Requires So Many Steps of**
4 |   **Analysis of Unspecified, Disparate Information that It Could Not,**
5 |   **Without Qualification, Be Answered**

6 |   Interrogatory No. 11's language appears deceptively simple, but, as Mozilo's
7 | argument makes clear, it actually seeks a multi-faceted analysis of the market
8 | reaction to innumerable unspecified pieces of information released by different
9 | entities, at different times over four years. In his portion of this stipulation, Mozilo
10 | describes the defense he intends to assert based on the answer to Interrogatory No.
11 | 11 that he had hoped for: "a complete defense to the claim that Mr. Mozilo and the
12 | other defendants 'hid from investors' that Countrywide engaged in 'unprecedented
13 | expansions of its underwriting guidelines.'" Mozilo certainly is entitled to make
14 | such an argument in his defense of this action.   But what he cannot successfully do
15 | is compress all of the factual, legal, and interpretative issues this putative defense
16 | raises into a single "yes" or "no" question. His attempt to do so renders the
17 | Interrogatory impossible to answer for two reasons: (1) the Interrogatory is
18 | unintelligibly vague; and (2) it is unintelligibly compound.

19 |   First, the Interrogatory is vague. Mozilo begins his argument by describing
20 | certain of the information in the prospectus supplements that he contends contradicts
21 | the alleged misrepresentations and omissions set forth in the Complaint. But in the
22 | Interrogatory itself, Mozilo took no steps to specify which information in the
23 | prospectus supplements he was inquiring about, beyond referring generally to "loan
24 | attributes." In his argument, Mozilo points to various statements from the narrative
25 | portion of the exemplar prospectus supplement, which information he claims
26 | contradict alleged misrepresentations and omissions.[5] However, his argument is

27 |

28 |   [5] A complete copy of the exemplar prospectus supplement of which Mozilo
submits excerpts with his motion papers, (Declaration of Daniel P. Lefler ("Lefler

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

1  silent, as was the Interrogatory, as to which of the pieces of information in the

2  hundreds of pages in the exemplar prospectus supplement constitute "information

3  about loan attributes."  For example, while not excerpted by Mozilo, the statement

4  "[w]hile more flexible, Countrywide Home Loans' underwriting guidelines still

5  place primary reliance on a borrower's ability to repay," appears in the exemplar

6  prospectus supplement.  Bendell Dec., Ex. 1 at 47.  In attempting to respond to the

7  Interrogatory, and this motion, the SEC is left to guess whether this statement

8  constitutes "information about loan attributes" and therefore a subject of the

9  Interrogatory, or whether Mozilo intended to exclude it as a general statement about

10  the underwriting process.  This same uncertainty would apply to innumerable

11  statements throughout all the prospectus supplements.   Accordingly, the

12  Interrogatory is impermissibly vague.

13      Second, even assuming the Commission could manage to correctly guess

14  what Mozilo intended to ask, the Interrogatory would require the Commission to

15  conduct an econometric event study.  In his portion of the Stipulation, Mozilo

16  partially explains the fraud-on-the-market theory, which he acknowledges is a legal

17  doctrine excusing proof of reliance by private plaintiffs.  He then indicates there is a

18  tension between the SEC's inability to answer Interrogatory No. 11 in the way he

19  would like and the SEC's support, in other contexts, for the fraud-on-the-market

20  theory, and the economic theory of efficient markets that underlies it.  What he

21  neglects to mention is that the fraud-on-the-market theory provides only a *rebuttable*

22  *presumption*, not a definitive determination, by the Supreme Court or by the SEC,

23  that in an efficient market an investor relies on the integrity of the price established

24  by the market, and therefore need not show direct reliance on the specific

25  misrepresentations or omissions alleged.  *Basic v. Levinson*, 485 U.S. 224, 245

26  (1988).

27

28  Decl."), Ex. 4), is attached to the Declaration of Spencer E. Bendell ("Bendell
    Dec."), Ex. 1.

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 17 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1    In fact there are a variety of complex factors that go into determining whether
2    an efficient market exists: (1) trading volume during the period; (2) the number of
3    analysts covering the security, (3) the number of market makers in the security, (4)
4    the security issuer's eligibility to file an S-3 Registration Statement, and (5)
5    empirical facts showing a cause and effect relationship between unexpected
6    corporate events or financial releases and an immediate response in the stock price.
7    *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989), *appeal dismissed*,
8    993 F.2d 875 (3rd Cir. 1993)  Of course the final factor, a cause and effect
9    relationship between news and stock price movement, is the most important,
10    because "[t]his, after all, is the essence of an efficient market and the foundation for
11    the fraud on the market theory." *Id.* at 1287.
12    Thus, in the guise of single sentence, Interrogatory No. 11 seeks to have the
13    SEC research, analyze, and come to a conclusion about each of these five,
14    potentially conflicting, factors, including the market's reaction to publicly available
15    information from all sources, not solely the roughly 800 prospectus supplements
16    filed on Edgar, and to provide a single comprehensive and meaningful "yes" or "no"
17    answer about them.  This is simply not realistic.  Due to the complexity inherent in
18    this inquiry, questions about the effect of information on a security price are
19    typically the subject of detailed reports and testimony by experts who perform "time
20    event or comparable index stud[ies], both of which are commonly used in securities
21    fraud cases."  *In re Seagate Tech. II Sec. Litig.*, 802 F. Supp. 271, 277 (N.D. Cal.
22    1992).
23    Interrogatory No. 11 does not stop there, but would require even more.
24    Because the Interrogatory asks about the market's reaction to each of thousands of
25    unspecified pieces of information in each prospectus supplement, it also requires the
26    SEC to determine the degree of intensity and credibility with which each piece of
27    information subsumed within the Interrogatory was transmitted.  Mozilo argues that
28    if the market for Countrywide stock is efficient, then the stock price necessarily

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 18 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1  reflected, at all times, all of the information contained in the prospectus
2  supplements.  But the analysis required by Interrogatory No. 11 is not so simple.  To
3  determine whether the disclosures in these prospectus supplements, which Mozilo
4  apparently sees as corrective of the deficiencies in Countrywide's periodic filings,
5  was reflected in the stock price, thereby preventing the stock from being mispriced
6  (and anyone from relying on that incorrect price), the disclosures must be
7  "'transmitted to the public with the degree of intensity and credibility sufficient to
8  effectively counterbalance any misleading impression created by insider's one-sided
9  representations.'"  *Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir.  1996) (quoting
10  *Kaplan v. Rose* 49 F.3d 1363, 1376 (9th Cir. 1994) and *In re Apple Computer Sec.*
11  *Litig.*, 886 F.2d 1109, 1116 (9th Cir. 1989)).  Such an inquiry underlies the "truth-on-
12  the market" defense to the fraud-on-the market theory.  *Kaplan*, 49 F. 3d at 1492-
13  93.[6]

14  **C.**   **Unable to Meaningfully Answer the Thousands of Disparate**
15  **Questions Implicitly Contained in Interrogatory No. 11, the SEC**
16  **Answered As Best It Could.**

17  Not surprisingly, in light of the above, the SEC was not able to formulate a
18  simple "yes" or "no" in response to the thousands of questions implicitly contained
19  in the Interrogatory.  Instead of merely objecting, the SEC explained its
20  interpretation of the Interrogatory and responded.  The SEC explained that it
21  interpreted the Interrogatory to inquire about the "summary loan pool" information
22  contained in the prospectus supplements, and explained the SEC's contentions

---

23  
24  [6] Of course, "[t]he truth-on-the market doctrine is a response to a very
25  particular theory of liability in private securities actions (the 'fraud on the market'
theory)."  *SEC v. Reys*, No. C09-1262RSM, 2010 WL 1734843 at *4(W.D. Wash.
April 28, 2010).  Unlike a private plaintiff, the SEC need not establish reliance to
26  establish liability under Section 10(b) of the Securities and Exchange Act of 1934,
15 U.S.C. § 78j(b) or Rule 10b-5, 17 C.F.R. § 240.10b-5.  *SEC v. Rana Research*, 8
27  F.3d 1358, 1364 (9th Cir. 1993).  As acknowledged by Mozilo, the fraud-on-the-
market theory addresses reliance.  As a result, the truth-on-the-market defense does
28  not apply to SEC actions.  *See Reys*, 2010 WL 1734843 at *4 (holding truth-on-the-
market defense inapplicable to SEC action).

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1  regarding that information -- that it was insufficient to cure the material

2  misrepresentations and omissions which form the basis of the SEC's case and which

3  were set forth in detail in response to Interrogatories 2, 3 and 5.  A question which

4  asks whether the price of the stock in question "reflect[ed]" certain information,

5  undoubtedly impliedly asks whether the price *accurately* reflected the information,

6  otherwise, the question is meaningless.  Where, as Mozilo contends here, the

7  information is on the same topic as the alleged misleading statements, the only way

8  to answer such as question is with reference to the net effect of the information as

9  compared to the alleged misrepresentations and omissions.  To the extent that

10  information in the prospectus supplements for offerings by entities other than

11  Countrywide might have provided investors in Countrywide stock with wholly or

12  partially curative disclosure, the effect of that information can only be understood

13  when counterbalanced against the effect of the false statements.  *See Provenz*, 102

14  F.3d at 1493.

15  **D.**     **The SEC Properly Objected to Mozilo's Interrogatory No. 11 As**

16  **Vague, Ambiguous and Compound**

17  As the SEC made clear in its objections to Interrogatory 11 contained within

18  its Responses and Supplemental Responses, and then more fully in the meet-and-

19  confer process, Interrogatory No. 11 simply asks too much to be intelligibly

20  contained in a single interrogatory or response.  While the SEC stated its objections

21  as "vague, ambiguous, and compound," the SEC went further and explained its

22  objections to Mozilo.  The SEC's Supplemental Response explains:

23  The Interrogatory purports to require the Commission to provide a

24  single response to a question . . . about unspecified "information about loan attributes" in potentially hundreds of unspecified prospectus

25  supplements issued for numerous offerings over a three [sic] year

26  period.

27  Then, in the meet-and-confer process, the SEC further explained its objections:

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 20 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1   As currently drafted, this Interrogatory impermissibly requires the
2   Commission to (1) determine what specific prospectus supplements this
    Interrogatory refers to; (2) ascertain which of them were actually filed
3   and made publicly available on what dates during the three year time
    period specified in the Interrogatory; (3) review literally thousands of
4   pages to determine what "information regarding loan attributes" is
5   contained in each prospectus supplement; (4) guess at what information
    the Interrogatory intends to refer to; (5) pull share price information for
6   each day within the three year time period in the Interrogatory; and (6)
7   conduct a study to determine whether the information in each
    prospectus supplement was reflected in the stock's share price on each
8   day during the period.
9
10  May 4, 2010 letter from Lynn M. Dean to Randall Jackson, Lefler Decl., Ex. 3.

11          This is simply not a case where a party has reflexively asserted "boilerplate,

12  generalized objections" which would be "tantamount to not making any objection at

13  all." Cf. Walker v. Lakewood Condo. Owners Ass'n, 186 F.R.D. 584, 587 (C.D. Cal.

14  1999). Rather, the SEC has explained to Mozilo, repeatedly, the extent to which his

15  Interrogatory is unclear and impermissibly conflates literally thousands of issues

16  requiring detailed research and analysis, into one. See Bailey v. SBC Disability

17  Income Plan, No. 05-4093-SAC, 2006 WL 3759578 at *5 (D. Kan. Dec. 19, 2006)

18  (narrowing interrogatory which would have required responding party to conduct a

19  search for certain job openings or positions by all employers available in a market

20  over a period of four and a half years). The SEC's objections to the Interrogatory

21  are well-founded and should be sustained.

22          E.      **Conclusion**

23          For the foregoing reasons, the SEC should not be required to provide

24  additional response to an improper interrogatory. Mozilo's motion should be

25  denied.

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

- 21 -

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11

1

2                                    Respectfully submitted,

3

4    Dated: May 17, 2010             IRELL & MANELLA LLP

5

6                                    By: _Daniel P. Lefler_____

7                                        David Siegel
                                         Daniel P. Lefler
8                                        Charles E. Elder
                                         Randall L. Jackson
9
                                         Attorneys for Defendant
10                                       Angelo R. Mozilo

11

12   Dated: May 17, 2010             SECURITIES AND EXCHANGE
                                     COMMISSION
13

14

15                                   By: _Spencer E. Bendell /vc____

16                                       John M. McCoy III
                                         Spencer E. Bendell
17                                       Lynn M. Dean
                                         Attorneys for Plaintiff
18                                       Securities and Exchange Commission

19

20

21

22

23

24

25

26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

2236492

JOINT STIPULATION REGARDING ANGELO MOZILO'S MOTION TO COMPEL
RESPONSE TO INTERROGATORY NO. 11