```
 1

 2                    UNITED STATES DISTRICT COURT

 3                   CENTRAL DISTRICT OF CALIFORNIA
                            WESTERN DIVISION
 4

 5
     SECURITIES AND EXCHANGE        )
 6   COMMISSION,                    )
                                    )
 7         PLAINTIFF,               )
                                    )
 8         VS.                      ) CASE NO. CV 09-3994-JFW(MANX)
                                    )
 9                                  )
     ANGELO MOZILO, ET AL.,         ) LOS ANGELES, CALIFORNIA
10                                  ) JUNE 8, 2010
                                    ) (10:04 A.M. TO 10:53 A.M.)
11         DEFENDANTS.              )
     _____)
12                       AMENDED TRANSCRIPT
13                            HEARING
            BEFORE THE HONORABLE MARGARET A. NAGLE
14             UNITED STATES MAGISTRATE JUDGE

15

16
     APPEARANCES:            SEE NEXT PAGE
17
     COURT REPORTER:         RECORDED; COURT SMART
18
     COURTROOM DEPUTY:       EARLENE CARSON
19
     TRANSCRIBER:            DOROTHY BABYKIN
20                           COURTHOUSE SERVICES
                             1218 VALEBROOK PLACE
21                           GLENDORA, CALIFORNIA  91740
                             (626) 963-0566
22

23

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING;
     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
25
```

```
 1    APPEARANCES:  (CONTINUED)
      FOR THE PLAINTIFF:        SECURITIES AND EXCHANGE COMMISSION
 2                              BY:  SPENCER EVAN BENDELL
                                     TRIAL COUNSEL
 3                              5670 WILSHIRE BOULEVARD
                                11TH FLOOR
 4                              LOS ANGELES, CALIFORNIA  90036

 5    FOR ANGELO MOZILO:        IRELL & MANELLA
                                BY:  DANIEL P. LEFLER
 6                                   ATTORNEY AT LAW
                                1800 AVENUE OF THE STARS
 7                              SUITE 900
                                LOS ANGELES, CALIFORNIA  90067
 8

 9    FOR DAVID SAMBOL:         ORRICK HERRINGTON & SUTCLIFFE LLP
                                BY:  MICHAEL C. TU
10                                   ATTORNEY AT LAW
                                405 HOWARD STREET
11                              SAN FRANCISCO, CALIFORNIA  94105

12    FOR ERIC SIERACKI:        DLA PIPER RUDNICK GRAY CARY US
                                BY:  MATTHEW D. CAPLAN
13                                   ATTORNEY AT LAW
                                401 B STREET
14                              SUITE 1700
                                SAN DIEGO, CALIFORNIA  92101
15

16

17

18

19

20

21

22

23

24

25
```

1

                              I N D E X

2

CASE NO. CV 09-3994-JFW(MANX)                        JUNE 8, 2010

3

PROCEEDINGS:   DEFENDANT ANGELO MOZILO'S MOTION TO COMPEL

4                         ANSWERS TO INTERROGATORIES

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        LOS ANGELES, CALIFORNIA; TUESDAY, JUNE 8, 2010; 10:04 A.M.

2             THE COURT:  GOOD MORNING, LADIES AND GENTLEMEN.  YOU

3    MAY BE SEATED.

4             THE CLERK:  CALLING CASE NUMBER

5    CV 09-03994-JFW(MANX), SECURITIES AND EXCHANGE COMMISSION

6    VERSUS ANGELO MOZILO, ET AL.

7             COUNSEL, PLEASE STATE YOUR APPEARANCES.

8             MR. BENDELL:  GOOD MORNING, YOUR HONOR.

9             SPENCER BENDELL FOR THE SEC.

10            THE COURT:  GOOD MORNING.

11            MR. LEFLER:  GOOD MORNING, YOUR HONOR.

12            DAN LEFLER OF IRELL & MANELLA FOR ANGELO MOZILO.

13            THE COURT:  GOOD MORNING.

14            MR. TU:  GOOD MORNING, YOUR HONOR.

15            MICHAEL TU, ORRICK, HERRINGTON & SUTCLIFFE, FOR

16   DEFENDANT DAVID SAMBOL.

17            THE COURT:  ALL RIGHT.

18            MR. CAPLAN:  MATTHEW CAPLAN OF DLA PIPER FOR

19   DEFENDANT ERIC SIERACKI.

20            THE COURT:  ALL RIGHT.  THANK YOU, GENTLEMEN.  YOU

21   MAY BE SEATED.

22            ALL RIGHT.  THIS IS A CASE -- OR A MOTION, I SHOULD

23   SAY, RATHER THAN A CASE IN WHICH I AM TENTATIVELY INCLINED TO

24   SAY THAT THE MOTION SHOULD BE GRANTED.  MY OLD LITIGATOR'S

25   INSTINCTS COME OUT AND I COULD ARGUE IF I WERE ON DIFFERENT

1    SIDES THE POINT EITHER WAY.  I COULD ARGUE IF I WERE SITTING ON

2    THE OTHER SIDE OF THE BENCH THAT IF THE QUESTION THAT

3    INTERROGATORY 11 SIMPLY MEANT TO ASK WAS WAS THE MARKET PRICING

4    FOR COUNTRYWIDE STOCK EFFICIENT, COULD HAVE ASKED THAT

5    QUESTION.  IT WOULD HAVE BEEN A LOT CLEARER.

6              ON THE OTHER HAND, THE QUESTION ASKED SEEKS TO KNOW

7    WHETHER FOR THE PERIOD 2004 THROUGH 2007 THE SEC CONTENDS THAT

8    THE PRICE OF COUNTRYWIDE COMMON STOCK DID NOT REFLECT THE

9    INFORMATION ABOUT LOAN ATTRIBUTES THAT WAS DISCLOSED IN

10   PROSPECTUS SUPPLEMENTS FILED BY CWABS, INC., CWALT, INC.,

11   CWHEQ, INC. AND CWMBS, INC., WHICH ARE FOUR SUBSIDIARIES OF

12   COUNTRYWIDE THAT ISSUED MORTGAGE-BACKED SECURITIES.

13             ACCORDING TO FOOTNOTE 3, CWABS SECURITIZED

14   CREDIT-BLEMISHED LOANS -- IT SOUNDS LIKE THEY WERE ALL SOMEWHAT

15   CREDIT-BLEMISHED LOANS.

16             CWALT DEALT WITH ALTERNATIVE LOANS, INCLUDING PAY

17   OPTION INTEREST-ONLY LOANS.

18             CWHEQ DEALT WITH HOME EQUITY LINES OF CREDIT.

19             THE CWMBS DEALT WITH PAY OPTION AND FIXED-RATE

20   NONCONFORMING LOANS.

21             THE SUPPLEMENTAL RESPONSE -- AND THAT'S THE ONLY ONE

22   I REALLY NEED TO DEAL WITH -- STATES A NUMBER OF OBJECTIONS,

23   INCLUDING A VAGUENESS ONE THAT WASN'T STATED IN RESPONSE TO THE

24   ORIGINAL -- WELL, THAT WASN'T ORIGINALLY STATED IN RESPONSE TO

25   INTERROGATORY 11.  BUT SUBJECT TO WITHOUT WAIVING THE

6

1   OBJECTIONS, AND TO THE EXTENT THE INTERROGATORY INTENDS TO

2   INQUIRE ABOUT THE SUMMARY LOAN POOL INFORMATION CONTAINED IN

3   THE PROSPECTUS SUPPLEMENTS FILED BY THE FOUR SUBSIDIARIES I

4   JUST DISCUSSED, THE COMMISSION RESPONDED AS FOLLOWS:

5            "THE COMMISSION CONTENDS THAT THE SHARE

6             PRICE OF COUNTRYWIDE'S COMMON STOCK DID

7             NOT REFLECT AT ALL TIMES IN THE REFERENCED

8             PERIOD THE MATERIAL NEGATIVE INFORMATION

9             REGARDING COUNTRYWIDE'S LOANS UNDERWRITING

10            SET FORTH IN THE COMMISSION'S RESPONSES TO

11            INTERROGATORIES 2, 3, AND 5, WHICH RESPONSES

12            ARE INCORPORATED BY REFERENCE, AND THAT THE

13            PROSPECTUS SUPPLEMENTS FOR CWABS, INC.,

14            CWALT, INC., CWHEQ, INC. AND CWMBS,

15            INC. WERE INSUFFICIENT TO CURE THOSE MATERIAL

16            MISREPRESENTATIONS AND OMISSIONS."

17       THAT RESPONSE READS TO ME LIKE AN INDIRECT YES OR A

18   QUALIFIED YES TO THE QUESTION POSED, WHICH IS, DO YOU CONTEND

19   THAT THE COUNTRYWIDE COMMON STOCK PRICE DID NOT REFLECT THE

20   INFORMATION ABOUT LOAN ATTRIBUTES DISCLOSED IN THE PROSPECTUS

21   SUPPLEMENTS.

22       IT SOUNDS TO ME LIKE YOU'RE SAYING, YES, IT DIDN'T

23   REFLECT THE INFORMATION, OR IT DIDN'T REFLECT IT PERFECTLY, OR

24   THE MARKET EFFICIENCY THAT WOULD USUALLY BE EXPECTED WAS

25   CLOUDED BECAUSE OF MATERIAL MISREPS AND OMISSIONS THAT YOU, THE

1    SEC, INDICATED IT OUTLINED IN RESPONSES TO OTHER

2    INTERROGATORIES.

3         AND I GUESS I WOULD TURN TO MR. MOZILO'S COUNSEL AND

4    SAY, IF THE ANSWER HAD BEEN ESSENTIALLY THE SAME ANSWER JUGGLED

5    AROUND A BIT, AND THE ANSWER HAD BEEN SUBJECT TO WITHOUT

6    WAIVING THE OBJECTIONS, YES, WE CONTEND THAT THE COMMON STOCK

7    PRICE DID NOT REFLECT THE INFORMATION ABOUT THE LOAN ATTRIBUTES

8    DISCLOSED IN THESE SUPPLEMENTS BECAUSE THE MATERIAL

9    MISREPRESENTATIONS THAT WE'VE DISCLOSED ELSEWHERE CLOUDED THE

10   PICTURE SUFFICIENTLY SO THAT THERE WASN'T APPROPRIATE MARKET

11   EFFICIENCY.

12        WOULD YOU HAVE AN OBJECTION TO THAT ANSWER, WHICH

13   WOULD HAVE A QUALIFIED YES?

14        MR. LEFLER:  I'M NOT SURE EXACTLY HOW TO ANSWER THAT

15   QUESTION IN PART BECAUSE I THINK I READ THE INTERROGATORY --

16        THE COURT:  BECAUSE YOU CAN'T FIGURE OUT WHAT THE

17   HECK I JUST SAID ABOUT WHAT THE ANSWER WOULD BE.

18        MR. LEFLER:  NO.  THE PROBLEM IS I READ THE

19   INTERROGATORY ANSWER DIFFERENTLY THAN THE COURT DOES.

20        THE WAY I READ THE ANSWER, IS IT ADMITTING THAT THE

21   INFORMATION ABOUT THE PROSPECTUS SUPPLEMENTS DID AFFECT

22   COUNTRYWIDE STOCK PRICE, WHICH IS WHAT WE WERE ASKING ABOUT.

23        BUT IT GOES ON TO SAY --

24        THE COURT:  BUT DID SO IMPERFECTLY BECAUSE OF THE

25   CLOUDING OF THE PICTURE BY THE MISREPRESENTATIONS ALLEGED --

1    MISREPRESENTATIONS AND OMISSIONS.

2            MR. LEFLER:  THAT'S RIGHT.  BUT THAT SECOND STEP

3    CONSTITUTES AN ARGUMENT ABOUT THE CONSEQUENCES OF THE FACT THAT

4    THE INFORMATION WAS IN THE PRICE.  AND IT DOESN'T GET TO THE

5    QUESTION OF WHETHER THE INFORMATION WAS IN THE PRICE, WHICH IS

6    ALL WE'RE ASKING ABOUT.

7            SO, WHAT THEY'RE TRYING TO SAY IS --

8            THE COURT:  WELL, WHAT --

9            MR. LEFLER: -- IT DOESN'T REALLY MATTER --

10           THE COURT:  HANG ON FOR A MINUTE.

11           MR. LEFLER:  SORRY.

12           THE COURT:  WHAT IF THE ANSWER TO THE QUESTION WAS IT

13   MAY HAVE BEEN IN THE PRICE, BUT IMPERFECTLY, AT BEST, BECAUSE

14   OF THESE OTHER ALLEGED MISREPRESENTATIONS AND OMISSIONS WHICH

15   CLOUDED THE PICTURE.

16           MR. LEFLER:  AGAIN, I WOULD NOT BE SATISFIED WITH

17   THAT ANSWER BECAUSE THAT'S NOT THE QUESTION THAT WE ASKED.  OUR

18   QUESTION IS NOT WAS THE PRICE OF COUNTRYWIDE STOCK CORRECT

19   DURING THIS PERIOD.

20           THE COURT:  BUT YOU'RE ASKING FOR A CLEAR, CLEAN YES

21   OR NO.  AND I'M NOT SURE THAT A CLEAR, CLEAN YES OR NO WITHOUT

22   QUALIFICATION CAN BE GIVEN OR THAT THE COURT COULD ORDER THAT

23   RESPONSE TO BE GIVEN.

24           MR. LEFLER:  LET ME TELL YOU WHY I THINK IT CAN BE

25   GIVEN AND WHY I THINK THAT SHOULD BE THE COURT'S ORDER.

1          WE GOT A CLEAR, CLEAN ANSWER TO THAT QUESTION LAST

2     YEAR WHEN WE FILED OUR MOTION TO DISMISS.  WE SAID IN OUR

3     MOTION TO DISMISS YOUR THEORY -- PART OF YOUR THEORY.  THEY

4     HAVE OTHER THEORIES AS WELL.  BUT ONE OF THE MAIN THEORIES IN

5     THE CASE IS THAT COUNTRYWIDE INVESTORS WERE UNAWARE OF THE

6     TREND TOWARDS RISKIER LOAN UNDERWRITING.

7          OUR RESPONSE WAS TO SAY THAT CAN'T BE RIGHT BECAUSE

8     EVERY TIME WE SOLD MORTGAGES INTO THE SECONDARY MARKET WE MADE

9     PUBLIC THE INFORMATION ABOUT WHAT WE WERE DOING.

10          AND WHAT THEY SAID AT THAT POINT WAS --

11          THE COURT:  WELL, HANG ON A MINUTE.  THESE PROSPECTUS

12     SUPPLEMENTS WERE BY COUNTRYWIDE SUBSIDIARIES.  I DON'T REALLY

13     KNOW WHAT COUNTRYWIDE ITSELF WAS SAYING.  IT'S NOT IN THE

14     MOTION.  AND IT SEEMS TO ME IT WOULD BE REASONABLE FOR THE SEC

15     TO SAY, HEY, YOU WANT TO TAKE THE STEP DOWN OF THE

16     SUBSIDIARIES' PROSPECTUS SUPPLEMENTS AND SAY THAT THOSE

17     SUPPLEMENTS PROVIDED ANY INFORMATION THAT THE MARKET NEEDED TO

18     APPRECIATE THE GREATER RISK.  MY PERSONAL FAVORITE, BY THE WAY,

19     WAS THEY STATED INCOME, WHICH MEANS YOU STATE IT.  WE BUY IT.

20     WE SAY, THUMBS UP.  WE DON'T VERIFY -- HECK OF AN UNDERWRITING

21     PROGRAM.  BUT -- AND, SO, I APPRECIATE YOUR SAYING THAT IF THAT

22     WAS IN A PROSPECTUS, GEE, THE MARKET SHOULD HAVE KNOWN THAT

23     THINGS WERE GETTING RISKIER.

24          HOWEVER, IF COUNTRYWIDE, INC. AND NOT THE C.W.

25     WHATEVER, THE FOUR SUBS, ARE -- IF COUNTRYWIDE ITSELF IN ITS

1   FILINGS IS NOT PUTTING THE INFORMATION OUT ABOUT WHAT IT'S

2   DOING THAT'S IN THE 803 SUPPLEMENTS OF THE SUBSIDIARIES, MIGHT

3   IT NOT CLOUD THE MARKET.

4          MR. LEFLER:  THAT'S EXACTLY -- THAT'S EXACTLY THE

5   ISSUE.  SO, THE SEC MADE EXACTLY THE ARGUMENT THAT THE COURT

6   JUST ARTICULATED, WHICH WAS THOSE DISCLOSURES BY THE

7   SUBSIDIARIES DON'T COUNT BECAUSE EQUITY INVESTORS COULDN'T BE

8   EXPECTED TO FIND THEM.  AND, THEREFORE, THOSE DISCLOSURES WOULD

9   NOT BE IN THE STOCK PRICE IN EFFECT.  THAT'S THE POSITION THAT

10  THEY TOOK LAST YEAR.

11         THAT'S WRONG.  AND WE'LL PROVE THAT THAT'S WRONG AT

12  TRIAL IF THAT'S WHAT WE HAVE TO DO.  THERE'S NOT AN ECONOMIST

13  IN AMERICA THAT'S GOING TO SAY THAT PUBLICLY AVAILABLE

14  INFORMATION THAT WAS ON THE SEC'S OWN WEBSITE ABOUT INVESTOR --

15  OR ABOUT LOAN ATTRIBUTES WAS MISSED IN AN EFFICIENT MARKET.  IT

16  ISN'T GOING TO HAPPEN.

17         AND THAT'S WHY WE ASKED THIS QUESTION.  AND THAT'S

18  WHY WE NEED A YES OR NO.  BECAUSE THEY TOOK THE POSITION LAST

19  YEAR, THEY SAID, NO, THESE DISCLOSURES DON'T COUNT.  THEY WERE

20  MADE TO DIFFERENT INVESTORS.  THEY WERE MADE BY SUBSIDIARIES.

21         BUT IN AN EFFICIENT MARKET, EVERY PIECE OF PUBLICLY

22  AVAILABLE INFORMATION IS IMPOUNDED INTO THE STOCK PRICE OF THE

23  COMPANY.

24         THE COURT:  WELL, THAT'S --

25         MR. LEFLER:  AND THAT'S --

11

1          THE COURT:  THAT'S WHAT I'M POSITING.  THEY COULD,

2     COULD THEY NOT, APPROPRIATELY ANSWER THIS BY BEING A LITTLE

3     MORE CLEAR BY STARTING WITH THE BACK END OF THEIR SUPPLEMENTAL

4     RESPONSE, TWEAKING IT A BIT AND SAYING, YES, WE CONTEND THAT

5     THE COMMON STOCK PRICE DID NOT REFLECT THE INFORMATION

6     DISCLOSED IN THE SUPPLEMENTS APPROPRIATELY OR ADEQUATELY

7     BECAUSE THAT INFORMATION WAS CLOUDED OR OFFSET BY THE

8     COUNTRYWIDE FILINGS.

9          SO, THE MARKET EFFICIENCY WAS MADE FAR MORE IMPERFECT

10     BY THESE CONFLICTING ROSY PICTURE IN COUNTRYWIDE'S.  BUT,

11     AGAIN, I HAVEN'T SEEN 2, 3, AND 5.  I KEEP FLIPPING THROUGH

12     THIS TO SEE IF I HAVE IT HERE.  AND I COULDN'T FIND IT IN A

13     COUPLE OF FLIP-THROUGHS.  I HAVE NOT STUDIED OR HAD MADE

14     AVAILABLE TO ME THE COUNTRYWIDE DISCLOSURES.  MAYBE THEY'RE

15     BURIED IN THESE PLEADINGS IN THE DISTRICT COURT PRIOR MOTION

16     PRACTICE.

17          BUT I GUESS WHAT I'M SAYING IS TO THE EXTENT YOU WANT

18     A BOLD UNQUALIFIED YES OR NO RESPONSE, AND YOU WANT ME TO ORDER

19     LIKE ON LAW AND ORDER, ANSWER THE QUESTION, YES OR NO, I HAVE

20     TROUBLE DOING THAT.

21          MR. LEFLER:  WELL --

22          THE COURT:  AND, FRANKLY, WE ALL KNOW THAT IN TRIALS

23     WHEN IT COMES TO ANSWER THE QUESTION YES OR NO, MORE OFTEN THAN

24     NOT, THE WITNESS GETS TO EXPLAIN IF THEY HAVE DIFFICULTY WITH A

25     CLEAR YES OR NO.

1          MR. LEFLER:  WELL, HERE'S WHY I DON'T THINK THAT

2     THERE SHOULD BE ANY DIFFICULTY ANSWERING THIS QUESTION YES OR

3     NO.

4          A YES ANSWER, YES, MEANING WE ADMIT THAT THE

5     INFORMATION WAS IN THE PRICE, IS NOT THE END OF THE BALLGAME.

6     WHAT THAT MEANS IS WE DON'T HAVE TO DEAL WITH ARGUING AT TRIAL

7     ABOUT WHETHER OR NOT THESE DISCLOSURES COUNT.  WE DON'T HAVE TO

8     DEAL WITH THAT ARGUMENT ANYMORE THAT THESE DISCLOSURES DON'T

9     COUNT BECAUSE THEY WERE MADE BY SUBSIDIARIES.  AND THEY WERE

10    MADE TO MORTGAGE-BACKED SECURITIES INVESTORS.

11         AND WE KNOW THAT THEY COUNT.  IT DOESN'T MEAN THAT WE

12    WIN.  IF THEY WANT TO ARGUE THAT THERE ARE OTHER

13    MISREPRESENTATIONS AND OMISSIONS AND THINGS LIKE THAT THAT MEAN

14    THAT THERE'S STILL A FRAUD IN THE CASE, WE UNDERSTAND THAT.  IN

15    FACT, WE ACKNOWLEDGE THAT DIRECTLY IN OUR PAPERS.

16         THE COURT:  ALL RIGHT.  LET ME HEAR FROM MR. BENDELL.

17         MR. BENDELL:  GOOD MORNING, YOUR HONOR.  AND I

18    APOLOGIZE FOR MY DELAY THIS MORNING.

19         THE COURT:  THEY'RE THE ONES WHOSE HOURLY RATES ARE

20    BEING JACKED UP WHILE THEY SIT AND WAIT FOR YOU.  SO, I HOPE

21    YOU APOLOGIZE TO THEM.

22         MR. BENDELL:  I WILL, YOUR HONOR.

23         THE COURT:  ALL RIGHT.

24         MR. BENDELL:  I THINK THAT YOUR HONOR HAS FOCUSED

25    SQUARELY ON ONE OF THE ISSUES THAT, YOU KNOW, CAUSES A PROBLEM

1    IN RESPONDING IN THE WAY THAT MR. MOZILO WOULD LIKE TO THE

2    INTERROGATORY, WHICH IS THAT AT THE END OF THE DAY YOU CANNOT

3    REALLY LOOK AT ANY ONE OF THESE PIECES OF INFORMATION THAT'S

4    CONTAINED IN THE 800 PROSPECTUS SUPPLEMENTS.  SO, WE'RE TALKING

5    ABOUT THOUSANDS OF LOANS IN EACH OF THESE HUNDREDS OF

6    PROSPECTUS --

7            THE COURT:  WELL, THAT'S WHY YOU REFER TO SUMMARY

8    POOL INFORMATION.

9            MR. BENDELL:  RIGHT.

10           AND SO -- SO, WHAT THE QUESTION IS REALLY ASKING IS

11   TO -- IF YOU TAKE THE ANALOGY THAT OUR CLAIMS OF FRAUDULENT

12   MISREPRESENTATIONS AND OMISSIONS IN THE --

13           THE COURT:  HANG ON FOR JUST A MINUTE.

14           YOU HAVE INDICATED -- I'M LOOKING AT PAGE 15 AT LINE

15   15:

16           "MOZILO PORTRAYS INTERROGATORY NUMBER 11 AS A

17            SIMPLE QUESTION WHICH ESSENTIALLY EQUATES TO

18            WHETHER THE SEC CONTENDS THAT THE MARKET FOR

19            COUNTRYWIDE'S COMMON STOCK WAS EFFICIENT.

20            IF THIS WAS WHAT MOZILO WANTED TO KNOW, HE SHOULD

21            HAVE ASKED THAT QUESTION."

22           AND THAT CLEARLY IS WHAT THE QUESTION IS DRIVING AT,

23   WAS THE MARKET EFFICIENT.  SO WAS ALL INFORMATION THAT WAS OUT

24   THERE CONSIDERED AND REFLECTED IN THE PRICE.

25           AND I DON'T THINK YOU ANSWER THE QUESTION, WHETHER

1    YOU PUT IT IN THE MORE DIRECT PARED DOWN OR WHETHER YOU LEAVE

2    IT IN THE FORM IT'S IN HERE.  YOU KIND OF SAID YOU CONTEND THAT

3    THE MARKET PRICE WAS FOULED UP BY COUNTRYWIDE'S MISREPS AND

4    OMISSIONS.  AND THEN YOU THREW THAT THE PROSPECTUS SUPPLEMENTS

5    OF THE FOUR SUBS WERE INSUFFICIENT TO CURE THE MATERIAL MISREPS

6    AND OMISSIONS.

7              BUT THAT KIND OF BUILDS A CUSHION IN BETWEEN THE

8    QUESTION AND THE ANSWER.  AND I DON'T SEE WHY YOU CANNOT AND

9    SHOULD NOT BE ORDERED TO ANSWER THE QUESTION MORE DIRECTLY.

10             AND BESIDES THE YES OR NO OPTION, ANOTHER OPTION

11   WOULD BE, I SUPPOSE, A, WE CAN'T ANSWER THAT FULLY AND

12   APPROPRIATELY AT THIS TIME BECAUSE WE BELIEVE -- AND I'M

13   LOOKING AT PAGE 18 -- THAT DUE TO THE COMPLEXITY INHERENT IN

14   THE INQUIRY, QUESTIONS ABOUT THE EFFECTS OF INFORMATION ON A

15   SECURITY PRICE ARE TYPICALLY THE SUBJECT OF DETAILED REPORTS

16   AND TESTIMONY BY EXPERTS, ET CETERA.

17             SO, THE THIRD WAY TO ANSWER IT WOULD BE WE CANNOT AT

18   THIS TIME GIVE A DEFINITIVE YES OR NO TO WHETHER WE ARE GOING

19   TO CONTEND THAT IT WAS OR WAS NOT, OR TO THE EXTENT TO WHICH WE

20   BELIEVE THESE DISCLOSURES WERE REFLECTED IN THE PRICE CANNOT BE

21   STATED AT THIS TIME.  IF IT IS ANTICIPATED IT WILL BE THE

22   SUBJECT OF TESTIMONY BY OUR EXPERTS.

23             BUT YOU JUST KIND OF EVADED THE QUESTION A LITTLE

24   BIT.

25             MR. BENDELL:  WELL, IT CERTAINLY WASN'T OUR INTENTION

1    TO EVADE THE QUESTION.

2         TO ANSWER I THINK THE COURT'S CONCERN MOST CONCISELY,

3    I THINK YOU ACTUALLY ALREADY ADDRESSED IT, YOUR HONOR, WHEN YOU

4    WERE QUESTIONING MR. LEFLER, WHICH IS, WOULD MR. MOZILO HAVE

5    BEEN SATISFIED BY AN ANSWER THAT SAID THE INFORMATION WAS

6    REFLECTED IN THE PRICE, BUT WE DON'T KNOW WHETHER IT WAS

7    ACCURATELY OR INACCURATELY REFLECTED IN THE PRICE.

8         I MEAN WHEN YOU SAY, REFLECTED IN THE PRICE, INHERENT

9    IN THAT IS THE IDEA THAT THAT INFORMATION IS REFLECTED

10   ACCURATELY.  AND THEN THAT LEAVES, AS MR. LEFLER WAS SAYING,

11   ARGUMENT OVER WHETHER THERE IS STILL FRAUDULENT

12   MISREPRESENTATIONS OR OMISSIONS THAT ARE AFFECTING THE PRICE.

13        SO, I THINK THAT, YOU KNOW, TO THE EXTENT THAT

14   THEY'VE TRIED TO SEPARATE OUT AND JUST SAY IS IT REFLECTED WITH

15   NO QUALIFICATION BEYOND THAT, THERE'S REALLY NO WAY FOR US TO

16   ANSWER THAT.  AS I THINK THE CASES THAT WE CITED, SUCH AS

17   PROVANTZ VERSUS MILLER AND THE APPLE COMPUTER SECURITIES

18   LITIGATION SHOW YOU CAN'T LOOK AT ANY STATEMENT IN A VACUUM.

19   YOU HAVE TO LOOK -- YOU HAVE TO -- YOU CAN ONLY WEIGH THE

20   EFFECT THAT A STATEMENT HAS ON THE MARKET OR THE PRICE IN

21   CONJUNCTION WITH THE COUNTERVAILING STATEMENT.

22        THE COURT:  I UNDERSTAND.

23        SO, AGAIN, I WOULD ASK YOU WHY CAN'T YOU ANSWER THE

24   QUESTION, WHICH IS, DO YOU CONTEND THAT THE COUNTRYWIDE COMMON

25   STOCK PRICE FAILED TO REFLECT THE INFORMATION IN THE PROSPECTUS

1   SUPPLEMENTS OF THE FOUR SUBS WITH A YES, WE CONTEND THAT IT DID

2   NOT REFLECT THE INFORMATION IN THE SUBS IN ANY APPROPRIATE

3   FASHION OR WHATEVER BECAUSE -- TAKE MY MARKET WAS CLOUDED BY

4   COUNTERVAILING STATEMENTS BY COUNTRYWIDE OR -- I MEAN, WHY

5   CAN'T YOU GIVE THEM A YES, NO, OR WE CAN'T TELL YOU YET.

6          MR. BENDELL:  TO THE EXTENT THAT REFORMULATING THE

7   ANSWER IN A WAY THAT THE COURT JUST DESCRIBED WOULD RESOLVE

8   THIS ISSUE, WE'D BE HAPPY TO REFORMULATE THE ANSWER IF THE

9   ISSUE -- IF THAT -- IF THAT'S WHAT WASN'T CLEAR ABOUT THE

10  ANSWER, THEN, YOU KNOW, WE WOULD -- YES, WE'LL REFORMULATE THE

11  ANSWER TO TRY TO CLARIFY WHERE WE VIEW THE DISCONNECT TO BE.

12         THE COURT:  WELL, WHAT IS THE SEC'S POSITION?  I

13  MEAN, IS IT THE YES, IT MAY HAVE REFLECTED THE INFORMATION.

14  BUT IF IT DID REFLECT THE INFORMATION, IT DID SO IMPERFECTLY

15  BECAUSE OF THE COUNTRYWIDE MISREPS AND OMISSIONS THAT ARE

16  ALLEGED BY THE SEC?

17         MR. BENDELL:  WELL, THIS IS ACTUALLY AN INTERESTING

18  CONTENTION INTERROGATORY TO BE SERVED ON A PRIVATE PLAINTIFF

19  BECAUSE ACTUALLY WE DON'T HAVE DETAILED CONTENTIONS IN THIS

20  REGARD BECAUSE WE DON'T HAVE TO ALLEGE RELIANCE BY ANYONE.

21  THAT'S NOT AN ELEMENT --

22         THE COURT:  YOU'VE GOT THAT IN A FOOTNOTE I SAW.

23         MR. BENDELL:  RIGHT.  IT'S NOT AN ELEMENT OF AN SEC

24  FRAUD CLAIM.  SO, THEREFORE --

25         THE COURT:  THE TRUTH-ON-THE-MARKET DEFENSE DOES NOT

1    APPLY TO SEC ACTIONS.

2            MR. BENDELL:  AND THE COROLLARY TO THAT, WE'RE NOT

3    ALLEGING FRAUD ON THE MARKET.  WE DON'T DEPEND ON -- NONE OF

4    OUR THEORIES DEPEND ON THE PRICE EITHER ACCURATELY OR -- WELL,

5    ACCURATELY REFLECTING ANY INFORMATION AS A SUBSTITUTE FOR

6    PROVING RELIANCE.  AND, SO, WE LIKEWISE DON'T HAVE THE SAME

7    NEED TO HAVE CONTENTIONS REGARDING WHETHER OTHER INFORMATION

8    THAT MIGHT SUPPORT A TRUTH-ON-THE-MARKET DEFENSE ARE PRESENT.

9    IT'S JUST NOT -- THAT'S NOT AN AREA THAT WE NEED TO ESTABLISH.

10           THE COURT:  WELL, THAT'S YOUR STATEMENT ON PARAGRAPH

11   20, STARTING AT LINE 9.

12           "TO THE EXTENT THAT INFORMATION IN THE PROSPECTUS

13            SUPPLEMENTS WERE OFFERINGS BY ENTITIES OTHER THAN

14            COUNTRYWIDE MIGHT HAVE PROVIDED INVESTORS IN

15            COUNTRYWIDE STOCK WITH WHOLLY OR PARTIALLY CURATIVE

16            DISCLOSURE, THE EFFECT OF THE INFORMATION CAN ONLY

17            BE UNDERSTOOD WHEN COUNTERBALANCED AGAINST THE

18            EFFECT OF THE FALSE STATEMENTS."

19           THAT'S YOUR POSITION?

20           MR. BENDELL:  THAT'S CORRECT, YOUR HONOR.

21           AND, AGAIN, I GUESS THE OTHER POINT THAT I'D MAKE IS,

22   YOU KNOW, REGARDLESS OF WHETHER -- AND I KNOW THAT WE'RE NOT

23   HERE TO LITIGATE THE SUBSTANCE, THE UNDERLYING -- THE

24   UNDERLYING SUBSTANCE OF THE CASE.  AND, SO, WHETHER TRUTH ON

25   THE MARKET IS A DEFENSE IN THIS CASE, YOU KNOW, WILL ALL BE

1    RESOLVED AT ANOTHER TIME IN ANOTHER FORUM.  BUT THAT BEING

2    SAID, I MEAN, THE -- YOU KNOW, I WILL JUST SAY BECAUSE I HEAR

3    WHAT I'M SAYING.  AND YOUR HONOR MAY THINK THAT I'M TRYING TO

4    ARGUE THAT THE INTERROGATORY WAS NOT RELEVANT.  AND THAT'S NOT

5    WHAT I'M SAYING.

6             THE COURT:  NO.  CLEARLY, IT'S RELEVANT.

7             MR. BENDELL:  BECAUSE -- RIGHT.  ALL RIGHT.

8             THE COURT:  AND IF YOU WANT TO OBJECT THAT IT'S

9    VAGUE, YOU SHOULD DO IT IN RESPONSE TO YOUR -- IN RESPONSE WHEN

10   YOU FIRST RESPOND OR YOU MAY WELL HAVE WAIVED IT.

11            THE COMPOUND, I SUPPOSE MAYBE.  BUT FRANKLY, YOU'VE

12   GOT TO WRESTLE WITH THE ISSUE OF WHETHER YOU'RE CONTENDING THAT

13   THE PRICE REFLECTED AS IT SHOULD IN AN EFFICIENT MARKET

14   INFORMATION IN THE PROSPECTUS SUPPLEMENTS THAT ARE FILED ON THE

15   SEC WEBSITE BY THE SUBS.

16            AND I THINK YOU NEED TO ANSWER THE QUESTION.  BUT I

17   AM LESS CONVINCED THAT IT IS APPROPRIATE FOR THE COURT TO SAY,

18   YES OR NO.  IT'S A YES OR NO QUESTION.  AND YOU MUST SAY YES OR

19   NO.  AND THAT'S ALL YOU CAN SAY.

20            SO, LET ME HEAR FROM MR. MOZILO'S COUNSEL AGAIN.

21            MR. LEFLER:  THANK YOU, YOUR HONOR.

22            I UNDERSTAND THE COURT'S HESITATION TO FORCE THE

23   COMMISSION TO JUST SAY YES OR NO.  BUT THERE IS AN IMPORTANT

24   PROBLEM IN THE ANSWER THAT THE COURT SUGGESTED, WHICH IS, THE

25   SORT OF YOU GIVETH AND THEN TAKETH AWAY WITH AN ANSWER THAT

1    SAYS, YES, WE ADMIT THE INFORMATION IS IN THE PRICE.  BUT THE

2    INFORMATION ISN'T PERFECTLY IN THE PRICE BECAUSE I DON'T KNOW

3    WHAT THAT MEANS.

4            THE COURT:  OR ISN'T EFFICIENTLY IN THE PRICE.

5            MR. LEFLER:  OR IS INEFFICIENTLY IN THE PRICE, RIGHT.

6    I DON'T KNOW WHAT THAT MEANS.

7            OUR QUESTION IS NOT ABOUT WHETHER THE PRICE WAS RIGHT

8    OR NOT OR WHETHER THE MARKET GOT IT RIGHT WHEN IT EVALUATED

9    THIS INFORMATION OR NOT.  THAT IS NOT WHAT WE'RE ASKING ABOUT.

10           WHAT WE'RE ASKING ABOUT IS DOES THE COMMISSION STILL

11   TAKE THE POSITION THAT IT DID A YEAR AGO THAT THIS INFORMATION

12   WASN'T AVAILABLE TO EQUITY INVESTORS.  THAT IS THE IMPORTANT

13   QUESTION.

14           THE COURT:  MR. BENDELL, WHAT'S THE ANSWER?  YOU

15   DON'T HAVE TO GET BACK UP TO THE LECTERN.  YOU CAN JUST HAVE

16   THE MICROPHONE -- AND YOU CAN SIT.

17           MR. BENDELL:  THE ANSWER --

18           THE COURT:  MAKE SURE THE MICROPHONE IS CLOSE TO YOU.

19           MR. BENDELL:  I APOLOGIZE, YOUR HONOR.

20           THE COURT:  THAT'S ALL RIGHT.

21           MR. BENDELL:  THE ANSWER IS IS THAT IS NOT THE

22   QUESTION THAT THE INTERROGATORY ASKS.  THE INTERROGATORY

23   DOESN'T ASK ABOUT WHETHER THE INFORMATION WAS AVAILABLE.  THEY

24   COULD HAVE ASKED THAT INTERROGATORY.  THIS INTERROGATORY ASKS

25   ABOUT THE PRICE.

1       AND, AGAIN, FOR ALL THE REASONS -- WITHOUT BELABORING

2   THE POINT, YOUR HONOR, FOR ALL THE REASONS I EARLIER DESCRIBED,

3   THAT'S A CONTENTION THAT, YOU KNOW, IT'S AGAIN A WELL-CRAFTED

4   INTERROGATORY TO PRIVATE PLAINTIFFS IN A CLASS ACTION BUT NOT

5   WELL-CRAFTED IN THIS INSTANCE.

6       MR. LEFLER:  CAN I RESPOND TO THAT POINT, YOUR HONOR?

7       THE COURT:  YES, MR. LEFLER, YOU MAY.

8       BUT PART OF THE -- WHEN I SAY I COULD ARGUE THIS BOTH

9   WAYS, ONE OF THE THINGS THAT REALLY JUMPS OUT AT ME IS GIVEN

10  THE ANSWER YOU'VE GOTTEN AND GIVEN THE MEETING AND CONFERRING

11  YOU'VE DONE, IT CERTAINLY SEEMS TO ME LIKE YOU COULD ASK SOME

12  OF THE QUESTIONS THAT YOU SAY THIS QUESTION IS ASKING AND

13  SHARPEN UP OR BOX THE SEC IN TO A POSITION.

14      IN OTHER WORDS, IF YOU WANT TO ASK ADMIT THAT THE

15  INFORMATION ON THE PROSPECTUSES WAS AVAILABLE ON YOUR WEBSITE

16  TO POTENTIAL INVESTORS AND COUNTRYWIDE, THEY'D PROBABLY HAVE TO

17  ADMIT IT, WOULDN'T THEY?

18      MR. LEFLER:  THEY WOULD.  A COUPLE OF RESPONSES TO

19  THAT.

20      NUMBER ONE IS WE DON'T HAVE TIME TO DO THAT ANYMORE.

21  OUR DISCOVERY CUTOFF IS AUGUST 2ND.  WE ASKED THIS QUESTION IN

22  FEBRUARY.  AND WE STILL DON'T HAVE --

23      THE COURT:  WELL, YOU --

24      MR. LEFLER:  -- AN ANSWER TO IT.

25      THE COURT:  YOU'VE GOT A BIT MORE TIME.  AND

```
1    SOMETIMES I THINK THAT PEOPLE SHOULDN'T TAKE FROM THE FEBRUARY

2    TILL JUNE FIGHTING ABOUT WHAT THEY DO HAVE.  AND SOMETIMES THEY

3    OUGHT TO GO FOR THE CURATIVE --

4              MR. LEFLER:  BUT --

5              THE COURT:  -- NAIL THEM DOWN --

6              MR. LEFLER:  -- LET ME DEFEND THE QUESTION.

7              THE COURT:  -- QUESTIONS AND THE IN BETWEEN.

8              MR. LEFLER:  LET ME DEFEND THE QUESTION THAT WE DID

9    ASK THOUGH.

10             WE ASKED -- ASKING WHETHER THE INFORMATION WAS

11   PUBLICLY AVAILABLE DOESN'T REALLY ACCOMPLISH ANYTHING BECAUSE

12   WE ALL KNOW THAT THE SEC'S WEBSITE IS PUBLICLY AVAILABLE.

13             THE COURT:  RIGHT.

14             MR. LEFLER:  ASKING WHETHER OR NOT IT WAS AVAILABLE

15   TO EQUITY INVESTORS DOESN'T ACCOMPLISH ANYTHING EITHER BECAUSE

16   IT'S PUBLICLY AVAILABLE.  ANYBODY CAN LOOK AT IF THEY WANT TO.

17             THE QUESTION THAT WE ASKED IS THE ONE WE HAD TO ASK

18   IN ORDER TO ACCOMPLISH WHAT WE'RE TRYING TO ACCOMPLISH, WHICH

19   IS, AT TRIAL, DO WE GET TO ARGUE THAT THESE DISCLOSURES COUNT

20   OR NOT.  AND THIS IS THE ANSWER TO THE TRUTH-ON-THE-MARKET

21   DEFENSE.

22             WE'RE NOT ARGUING A TRUTH-ON-THE-MARKET DEFENSE.

23   WHAT WE'RE SAYING IS IF THE SEC CONCEDES THIS POINT, THAT

24   EQUITY IN -- THAT THIS INFORMATION WAS REFLECTED IN THE PRICE,

25   NOT PERFECTLY REFLECTED IN THE PRICE, DIDN'T MAKE THE PRICE
```

1    PERFECT, BUT THIS WAS TAKEN INTO ACCOUNT BY EQUITY INVESTORS --

2    AND THAT'S WHAT ECONOMISTS WILL SAY.  OUR ECONOMIST WILL SAY

3    IT.  AND THEY'RE GOING TO HAVE A HARD TIME FINDING AN ECONOMIST

4    WHO WILL SAY ANYTHING DIFFERENTLY -- IF WE ARE RIGHT ON THAT

5    POINT, AND THAT'S WHY WE ASKED THIS QUESTION, THEN WE DON'T

6    HAVE TO ARGUE ANYMORE ABOUT WHETHER OR NOT THIS INFORMATION

7    COUNTS.  AND THIS IS VERY IMPORTANT IN THIS CASE BECAUSE IF

8    THIS INFORMATION COUNTS, THERE ARE LIKELY GOING TO BE

9    CONSEQUENCES TO THEIR CASE FROM THAT.

10        THE COURT:  MR. BENDELL, IS THERE ANY REAL QUESTION

11   AT THIS POINT THAT THE INFORMATION COUNTS, AS MR. LEFLER PUTS

12   IT?  ISN'T THE QUESTION HOW MUCH DOES IT COUNT?

13        MR. BENDELL:  THAT'S CORRECT, YOUR HONOR.

14        MR. LEFLER:  NO.

15        MR. BENDELL:  BECAUSE UNDER ANY STANDARD, EVEN IF --

16   EVEN IF THE EFFECT ON THE PRICE WERE COMPLETELY NOT AT ISSUE

17   AND NOT PUT AT ISSUE BY THIS INTERROGATORY, THE DEFENDANTS

18   WOULD STILL INTEND TO ARGUE THAT THE DISCLOSURES THAT ARE

19   CONTAINED IN THE PROSPECTUSES REVEAL THE DEFENDANTS' LACK OF

20   SCIENTER BECAUSE HOW COULD THEY BE SHARING INFORMATION IN ONE

21   CONTEXT THAT THEY INTENDED TO HIDE IN ANOTHER CONTEXT.

22        SO, REGARDLESS OF A YES OR A NO IN RESPONSE TO THIS

23   INTERROGATORY, IF IT WERE POSSIBLE, AND, AGAIN, I DON'T CONCEDE

24   THAT IT'S POSSIBLE TO ANSWER WITH A ONE-WORD ANSWER, THESE

25   ISSUES WOULD STILL BE AT PLAY IN TRIAL.

```
 1              MR. LEFLER:  YOUR HONOR, THEY'VE ALREADY ANSWERED
 2    THIS BEFORE.  THEY SAID LAST YEAR THE DISCLOSURES DON'T COUNT.
 3    THEY COULDN'T HAVE BEEN MORE CLEAR ABOUT THAT.  IT'S AT PAGE 19
 4    OF THEIR OPPOSITION.  IT'S EXHIBIT 8 TO MY DECLARATION.  THEY
 5    TOOK A POSITION ON THIS ISSUE.  THEY SAID THESE DISCLOSURES
 6    DON'T COUNT.
 7              AND THAT'S AN IMPORTANT ISSUE FOR US BECAUSE WE WILL
 8    -- WE WILL PROVE THAT THEY DO.  BUT THE QUESTION IS WHETHER WE
 9    HAVE TO PROVE THAT THEY DO.  EVERYTHING ELSE THAT MR. BENDELL
10    HAS ARGUED IS ARGUMENT ABOUT THE CONSEQUENCES IF THESE
11    DISCLOSURES COUNT.  AND THAT IS NOT RESOLVED BY THE
12    INTERROGATORY.  AND I ADMIT THAT THAT'S NOT RESOLVED BY THE
13    INTERROGATORY.
14              THE COURT:  BUT --
15              MR. LEFLER:  THE CONSEQUENCE --
16              THE COURT: -- AGAIN, I ASKED MR. BENDELL, DOES THE
17    SEC NOT CONCEDE THAT THESE DISCLOSURES AND THE PROSPECTUS
18    SUPPLEMENTS BY THE FOUR SUBSIDIARIES COUNT, TO USE MR. LEFLER'S
19    -- THE QUESTION IS HOW MUCH.
20              MR. BENDELL:  I --
21              MR. LEFLER:  THAT'S NOT -- ARE YOU ASKING ME OR ARE
22    YOU ASKING HIM?
23              THE COURT:  MR. BENDELL.
24              MR. BENDELL:  I GUESS I'M A LITTLE UNCLEAR ON WHAT AT
25    THE END OF THE DAY IT MEANS TO COUNT.  BUT I DON'T -- BUT I
```

1    GUESS I'M UNCLEAR.  I MEAN, THAT'S WHY -- THAT'S WHY THERE'S SO

2    MUCH THAT'S PACKED INTO THIS INTERROGATORY THAT IT'S DIFFICULT

3    --

4         THE COURT:   OKAY.  WELL, LET ME BREAK IT DOWN

5    ANOTHER WAY.  DOES THE SEC CONCEDE THAT THE PRICE OF

6    COUNTRYWIDE STOCK REFLECTED AT LEAST TO SOME EXTENT THE

7    INFORMATION ABOUT LOAN ATTRIBUTES DISCLOSED IN THE PROSPECTUS

8    SUPPLEMENTS?

9         MR. BENDELL:  WELL, IT'S -- I DON'T KNOW THAT I'D USE

10   THE EXACT PHRASEOLOGY AT LEAST TO SOME EXTENT.  BUT, YES, I

11   THINK WE WOULD -- WE WOULD CONCEDE THAT THE INFORMATION THAT'S

12   OUT THERE COULD POTENTIALLY AFFECT THE PRICE WHETHER -- AND

13   THERE'S A COUPLE OF POINTS I HAVE TO MAKE TO FOLLOW UP ON THAT

14   BECAUSE IT DOES GET TO THE COMPOUND NATURE OF THE

15   INTERROGATORY.

16        THERE'S 800 PROSPECTUS SUPPLEMENTS.  THERE'S NO

17   REASON TO BELIEVE THAT EACH ONE -- THAT EACH PIECE OF

18   INFORMATION IN EACH ONE OF THOSE WOULD HAVE THE SAME EFFECT.

19   SO, IT'S VERY HARD TO GIVE A BLANKET ANSWER TO ALL OF THAT.

20        SOME OF THE --

21        THE COURT:  ALL RIGHT.  BUT HANG ON.  THE PROSPECTUS

22   SUPPLEMENTS, SOMEWHERE IN THE 803 OF THEM, THERE ARE

23   DISCLOSURES.  CERTAINLY, THERE WERE DISCLOSURES IN ONE -- IT

24   MUST HAVE PROBABLY BEEN THE BEST ONE.  THAT'S WHY IT'S CITED

25   TO, THE MID-2006 -- THAT THE BORROWERS HAD IMPAIRED CREDIT

1    HISTORIES, INCLUDING OUTSTANDING JUDGMENTS OR PRIOR

2    BANKRUPTCIES, AND THAT THE STATED INCOME PROGRAM WAS A

3    YOU-SAY-IT-WE-BELIEVE-IT PROGRAM.  IF THOSE KINDS OF

4    DISCLOSURES WERE MADE IN THE SUPPLEMENTAL PROSPECTUSES FILED BY

5    THE COUNTRYWIDE SUBS THAT WERE PACKAGING THESE LOANS,

6    SECURITIZING THE LOANS, WHATEVER THE HECK THEY WERE DOING WITH

7    THE LOANS, WOULDN'T THE COMMON STOCK PRICE REFLECT SUCH

8    INFORMATION THAT HAD COME INTO THE MARKETPLACE, AT LEAST TO

9    SOME EXTENT?

10         MR. BENDELL:  WELL, I GUESS THE CLOSEST ANALOGY I

11   COULD DRAW IS IF YOU HAVE SOMEBODY SCREAMING WITH A BULLHORN,

12   FIRE, AND THEN YOU HAVE SOMEBODY ELSE WHISPERING IN A CORNER,

13   NO, THERE'S ONLY A FIRE IN A PORTION OF THE BUILDING OR

14   SOMETHING LIKE THAT, HOW CAN I -- HOW CAN THE SEC ANSWER

15   WHETHER THE INFORMATION ABOUT THE PERSON WHISPERING IN THE

16   CORNER IS REFLECTED IN THE PRICE.  MAYBE SOME PEOPLE HEARD

17   THAT.  MAYBE OTHERS DIDN'T.  IT'S NOT -- IT'S VERY DIFFICULT TO

18   JUST GIVE A BLANKET YES OR NO ANSWER ACROSS ALL OF THE

19   INFORMATION OVER THE FOUR-YEAR PERIOD, A VARIETY OF DIFFERENT

20   TYPES OF INFORMATION THAT ARE CONTAINED IN THERE, AND JUST SAY

21   YES OR NO.  I MEAN, I THINK THAT, WE COULD -- I CAN SEE THAT

22   PERHAPS OUR RESPONSE DOESN'T MAKE AS --

23         THE COURT:  STEP UP TO THE QUESTION.

24         MR. BENDELL:  -- MAKE AS CLEAR AS YOUR HONOR HAS A

25   WAY OF ANSWERING MORE PRECISELY OUR CONTENTION ABOUT VIEWING

1    THE DISCLOSURES IN THE PROSPECTUS IN THE CONTEXT OR IN

2    CONJUNCTION WITH THE MISREPRESENTATIONS AND OMISSIONS THAT WE

3    ALLEGE IN COUNTRYWIDE, THE PARENT'S FILINGS.  AND WE CAN MAKE

4    THAT RESPONSE MORE CLEAR AS YOUR HONOR SUGGESTED.  BUT TO GO

5    BEYOND THAT, I'M JUST NOT SURE HOW WE COULD DO THAT.

6            THE COURT:  YES, MR. LEFLER.

7            MR. LEFLER:  MAY I OFFER A SUGGESTION?

8            I HAVE A SUGGESTION THAT I THINK IS FAIR.  I THINK

9    THE ORDER SHOULD BE THEY NEED TO GIVE US A YES OR A NO TO OUR

10   QUESTION.  IF THEY WANT TO SAY IN THEIR ANSWER THAT BY SAYING,

11   YES, WE CONCEDE THAT IT WAS REFLECTED IN THE PRICE.  WE DO NOT

12   CONCEDE THAT THE PRICE WAS ACCURATE AT ALL TIMES.  I CAN LIVE

13   WITH THAT.

14           WHAT I CAN'T LIVE WITH IS SOMETHING THAT SAYS, WELL,

15   MAYBE SOME OF IT WAS.  AND WE'RE NOT REALLY SURE THE EXTENT TO

16   WHICH IT WAS REFLECTED IN THE PRICE.  AND THERE ARE VARIATIONS

17   AND DEGREES.  THIS ISN'T --

18           THE COURT:  WELL, HANG ON.  IF THEY WERE GOING TO

19   SAY, YES, WE BELIEVE THAT IT WAS REFLECTED IN THE PRICE, THE

20   EXTENT TO WHICH AND THE PARTICULAR INFORMATION, IN PARTICULAR

21   SUPPLEMENTS, WHICH WE BELIEVE WAS REFLECTED WILL BE THE SUBJECT

22   OF TESTIMONY BY OUR EXPERT WHO IS STILL FORMULATING HIS OR HER

23   REPORT.

24           WOULD THAT BE ADEQUATE?

25           MR. LEFLER:  THAT WOULD BE OKAY.  I MEAN, I THINK --

1           THE COURT: THAT'S NOT WHAT YOU'D LIKE.  BUT, I MEAN,

2     CERTAINLY THAT WOULD DO THE TRICK.

3           WOULD IT NOT?

4           MR. LEFLER:  I REALLY THINK THAT THIS QUESTION IS A

5     FAIR TOGGLE YES OR NO.  BECAUSE THE QUESTION WE'RE ASKING

6     RELATES DIRECTLY TO THE POSITION THEY TOOK LAST YEAR.  AND

7     WE'RE BASICALLY ASKING THEM DO YOU STILL SAY THAT, RIGHT.  LAST

8     YEAR YOU SAID THIS INFORMATION DOESN'T COUNT.  IT'S NOT

9     REFLECTED IN THE PRICE.  ARE YOU STILL GOING TO ARGUE THAT.

10          I THINK THE MORE FAIR QUALIFICATION FOR THEM IS TO

11    ANSWER OUR QUESTION YES OR NO.  AND THEN THEY CAN MAKE CLEAR

12    THAT THEY DON'T CONCEDE THE PRICE WAS ACCURATE, IF THEY WANT TO

13    SAY THAT.  WE'RE NOT REALLY ASKING THAT.  BUT IF THEY WOULD

14    FEEL MORE COMFORTABLE SAYING, YES, WE CONCEDE THAT THE

15    INFORMATION WAS REFLECTED IN THE PRICE.  BY ADMITTING THAT,

16    WE'RE NOT CONCEDING THAT THE PRICE WAS ACCURATE.  AND WE HAVE

17    OTHER CONTENTIONS THAT THERE WAS MISINFORMATION IN THE MARKET

18    THAT MADE THE PRICE INACCURATE.  I'M PERFECTLY HAPPY WITH THAT.

19          BUT I NEED A YES OR NO TO THE QUESTION OF WHETHER

20    THIS INFORMATION WAS REFLECTED IN THE PRICE -- NOT WHETHER IT

21    MADE THE PRICE CORRECT, OR WHETHER IT MADE THE PRICE RIGHT, OR

22    WHETHER IT'S A DEFENSE TO EVERY CLAIM IN THE CASE.

23          THE COURT:  AND THEY COULD SAY, YES, IT WAS

24    REFLECTED.  HOWEVER, WE BELIEVE THAT THE EXTENT TO WHICH IT WAS

25    REFLECTED --

1          MR. LEFLER:  THAT'S THE PROBLEM.  THE EXTENT TO WHICH

2     IS A PROBLEM.  YES, IT WAS REFLECTED, BUT WE STILL CONTEND THE

3     PRICE WAS INACCURATE FOR OTHER REASONS.  THAT'S A FAIR ANSWER.

4          BUT THE EXTENT TO WHICH IT WAS REFLECTED IS NOW

5     QUIBBLING, WELL, WAS IT -- WAS IT OR WASN'T IT?  WAS IT OR

6     WASN'T IT?  THEY SAID LAST YEAR IT WASN'T.

7          THE COURT:  YES.  BUT IF THEY SAID, YES, IT WAS

8     REFLECTED, BUT THE EXTENT TO WHICH IT WAS REFLECTED WAS CLOUDED

9     BY THE -- IT'S A DIFFERENT WAY OF SAYING WHAT YOU JUST SAID

10    WOULD BE OKAY -- WAS CLOUDED BY THE MISREPS AND OMISSIONS WHICH

11    WE ALLEGE AND HAVE SET FORTH IN OTHER INTERROGATORY RESPONSES.

12    I THINK THAT WOULD GIVE YOU THAT TO WHICH YOU'RE ENTITLED.

13         MR. LEFLER:  MY ONLY LITTLE ARGUMENT WITH THAT --

14         THE COURT:  IT WOULD BE LESS THAN PERFECT FOR YOU.  I

15    UNDERSTAND.

16         MR. LEFLER:  MY ONLY LITTLE ARGUMENT WITH THAT -- AND

17    WE'RE REALLY I THINK TALKING ABOUT SEMANTICS, BUT THEY'RE

18    SEMANTICS --

19         THE COURT:  WE KIND OF ARE.

20         MR. LEFLER:  BUT THEY'RE SEMANTICS THAT MIGHT MATTER

21    AND MIGHT NOT MATTER.  I'M CONCERNED THAT THEY MIGHT.  AND IT

22    MIGHT BE LETTING THEM OFF THE HOOK ON SOMETHING THAT I DON'T

23    THINK THEY SHOULD BE LET OFF THE HOOK ON.

24         I THINK WE'RE SAYING CLOSE TO THE SAME THING.  I

25    THINK WE'RE ENTITLED TO AN ANSWER ON THEIR POSITION ON THIS.

```
 1    AND ONE OF THE REASONS FOR THAT IS IF THEY'RE GOING TO STICK TO

 2    THE POSITION THAT THE INFORMATION WASN'T --

 3              THE COURT:  I --

 4              MR. LEFLER: -- IN THE PRICE --

 5              THE COURT: -- HEAR YOU.  I THINK MR. BENDELL --

 6              MR. LEFLER:  RIGHT.

 7              THE COURT: -- HEARS YOU LOUDLY AND CLEARLY TOO.

 8              MR. LEFLER:  OKAY.

 9              THE COURT:  I'LL TELL YOU WHAT I'M INCLINED TO DO.

10    I'M INCLINED TO GRANT THE MOTION AND ORDER THE SEC TO PROVIDE A

11    YES OR A NO RESPONSE TO THE DO THEY CONTEND THAT THE STOCK

12    PRICE OF THE COUNTRYWIDE COMMON STOCK DID NOT REFLECT THE

13    INFORMATION ABOUT LOAN ATTRIBUTES DISCLOSED IN THE PROSPECTUS

14    SUPPLEMENTS FILED BY THE FOUR SUBS.

15              BUT I AM NOT GOING TO PRECLUDE THE SEC FROM EXPANDING

16    ON THE ANSWER BY SAYING, YES, IT'S REFLECTED; HOWEVER, NOT AS

17    WE WOULD EXPECT IT TO BE IF THERE WEREN'T OTHER VOICES, THE

18    BULLHORN VOICE WITH THE FIRE IN MR. BENDELL'S IN THE MARKET.

19              WHAT I WOULD BE FURTHER INCLINED TO DO --

20              MR. BENDELL, I'LL HEAR FROM YOU IN A MINUTE --

21              -- IS TO SET A DATE BY WHICH IN THE NEAR FUTURE THE

22    SUPPLEMENTAL RESPONSE IS TO BE PROVIDED, TO REQUEST THAT A COPY

23    OF THAT -- IT DOESN'T HAVE TO BE FILED BUT BE PROVIDED TO ME

24    AND TO SET A FOLLOW-UP TELEPHONIC STATUS CONFERENCE TO SEE IF

25    THE ISSUE IS NOW RESOLVED.
```

1          AND, AGAIN, MR. LEFLER, THE ONLY DISAGREEMENT WE

2    REALLY HAVE IS THE EXTENT TO WHICH THE SEC AFTER IT SAYS YES OR

3    NO MAY EXPLAIN AND QUALIFY ITS ANSWER.

4          ISN'T THAT REALLY NOT THE ONLY --

5          MR. LEFLER:  YES.  I --

6          THE COURT: -- ISSUE LEFT?

7          MR. LEFLER:  I THINK THAT'S RIGHT.

8          THE COURT:  MR. BENDELL.

9          MR. BENDELL:  WELL, YOUR HONOR, I THINK THAT DOES

10   FOLD ALL INTO ONE -- DOES YET AGAIN SORT OF REQUIRE TO FOLD

11   INTO ONE ANSWER FOUR YEARS OF INFORMATION WITH DIFFERENT

12   PROSPECTUS SUPPLEMENTS.  I UNDERSTAND THAT AS AN ECONOMIC

13   THEORY, A MATTER OF ECONOMIC THEORY, RIGHT, AN EFFICIENT MARKET

14   IS AN OFF/ON SWITCH.  AND EITHER ALL OF THE INFORMATION IS

15   REFLECTED IN THE PRICE OR IT'S NOT.  BUT AS A MATTER OF --

16          THE COURT:  KIND OF YES KIND OF NO BECAUSE IF THERE

17   ARE MIXED SIGNALS IN THE MARKET, THEN, IT CLOUDS --

18          MR. BENDELL:  AND --

19          THE COURT:  -- THE PICTURE.

20          MR. LEFLER:  NO.

21          THE COURT:  HUH?

22          MR. LEFLER:  NO.  THAT MEANS THERE MIGHT BE OTHER

23   INFORMATION THAT MADE THE PRICE INCORRECT, BUT IT DOESN'T MEAN

24   THAT THAT INFORMATION WASN'T IN THE PRICE.  THAT'S AN IMPORTANT

25   DISTINCTION.

1          SORRY TO INTERRUPT.

2          THE COURT:  I UNDERSTAND.

3          GO AHEAD.

4          MR. BENDELL:  BUT MY POINT IS MORE -- THEY ARE NOT

5     ASKING FOR WHAT OUR ECONOMIC THEORY IS.  AGAIN, IF THEY WANTED

6     TO ASK IF THERE WAS AN EFFICIENT MARKET, THEY COULD HAVE.

7          WHAT THEY'RE ASKING IS FOR 800 PROSPECTUSES FOR THE

8     THOUSANDS OF PIECES OF DATA IN THE PROSPECTUS FOR US TO SAY

9     ABOUT EACH ONE WAS IT REFLECTED.  SOME OF THE PROSPECTUSES,

10    THEY'RE -- I MEAN, YOUR HONOR HAS --

11         THE COURT:  SO, THEY'RE ALL ON YOUR WEBSITE?

12         MR. BENDELL:  RIGHT -- WELL, I'D HAVE TO GO BACK AND

13    LOOK AGAIN AT HOW THE INTERROGATORY --

14         THE COURT:  THE PAPERS SAY THEY'RE ONLY ASKING ABOUT

15    THE PROSPECTUSES THAT ARE ON EDGAR.

16         IS THAT RIGHT?

17         MR. LEFLER:  THAT'S CORRECT, YOUR HONOR.

18         THE COURT:  ALL RIGHT.  SO, IF YOU NEED TO LIMIT IT

19    SAYING, AND UNDERSTANDING THAT THE QUESTION ONLY ASKS ABOUT

20    SUPPLEMENTAL PROSPECTUSES THAT WERE FILED WITH THE SEC AND ARE

21    AVAILABLE ON EDGAR, YOU CAN -- YOU DON'T HAVE A PROBLEM WITH

22    THAT QUALIFICATION IN THE --

23         MR. LEFLER:  I HAVE NO PROBLEM WITH THAT.

24         THE COURT: -- INTERIM.  OKAY.

25         MR. BENDELL:  SO, IN ANY EVENT, THE VARIOUS

1    SUBSIDIARIES THAT ARE ISSUING THE PROSPECTUSES HAVE THOSE NAMES

2    LIKE CWALT.  THEY'RE NOT CLEARLY IDENTIFIABLE AS COUNTRYWIDE IN

3    THE FIRST INSTANCE.  AND, SO, FOR EXAMPLE, AS -- IF YOU WERE TO

4    --

5                THE COURT:  BUT A STOCK MARKET ANALYST.

6                MR. BENDELL:  RIGHT.

7                THE COURT:  I MIGHT NOT KNOW WHO THEY -- WHAT THE

8    COMPANIES WERE, WHAT THEIR CONNECTION WAS, BUT A MARKET ANALYST

9    WOULD CERTAINLY KNOW, WOULDN'T THEY?

10               MR. BENDELL:  WELL, I GUESS MY POINT, YOUR HONOR, IS

11   THAT SOME OF THE INFORMATION COULD BE TRANSMITTED MORE WITH A

12   LOUDER VOLUME, IF YOU WILL, THAN --

13               THE COURT:  RIGHT.  THAT'S YOUR BULLHORN WITH THE

14   FIRE.

15               MR. BENDELL:  RIGHT.

16               THE COURT:  AS OPPOSED TO A WHISPER.

17               MR. BENDELL:  RIGHT.  BUT ALL -- SO THAT GOES TO THE

18   PERIODIC FILINGS THAT WE ALLEGE ARE FRAUDULENT VERSUS THE

19   PROSPECTUS SUPPLEMENTS THAT THEY ALLEGE ARE A DEFENSE.

20               BUT, ALSO, WITHIN THE PROSPECTUS SUPPLEMENTS, SOME OF

21   THOSE MAY HAVE A LOUDER VOLUME THAN OTHERS, YOUR HONOR, BECAUSE

22   FOR SORT OF -- FOR VARIOUS REASONS THEY MAY BE EASIER TO FIND

23   OR HARDER TO FIND.  AND THE INFORMATION THAT'S IN THEM MAY BE

24   MORE OR LESS BURIED OR REQUIRED, MORE OR LESS ANALYSIS TO

25   SYNTHESIZE -- RIGHT? -- BECAUSE NOT EVERY --

```
 1              THE COURT:  BUT AGAIN, MR. BENDELL, I'M -- AND MR.

 2    LEFLER IS GOING TO CRINGE AGAIN -- I'M NOT INCLINED TO LIMIT

 3    YOUR FURTHER RESPONSE BEYOND THE YES, WE DO CONTEND THAT THE

 4    COMMON STOCK PRICE DID NOT REFLECT THE INFORMATION OR NO, WE

 5    DON'T CONTEND THAT IT DIDN'T REFLECT THE INFORMATION.

 6              BEYOND THAT, YOU CAN SAY -- IF YOU WERE TO SAY, YES

 7    -- OR I GUESS IT WOULD BE A NO -- NO, WE DO NOT CONTEND --

 8    IT'S THE DOUBLE NEGATIVE -- THAT THE PRICE DID NOT REFLECT THE

 9    INFORMATION IN THE PROSPECTUSES.  PERIOD.

10              HOWEVER, THERE ARE 803 OF THEM.  IT WOULD NEED A

11    LEVEL OF SOPHISTICATION TO FIND THE -- SINCE NONE OF THE

12    ACRONYMS SAY COUNTRYWIDE -- TO FIND THIS.  AND WE BELIEVE THAT

13    THE LOUDER VOICE OF COUNTRYWIDE'S OWN FILINGS -- IT WOULD BE

14    DIFFERENTLY PHRASED -- WOULD COUNTERACT THE IMPACT THESE MIGHT

15    HAVE HAD ON THE MARKET PRICE.  SO, THAT'S YOUR ANSWER.

16              I'M INCLINED TO BELIEVE THAT, YES, NO, PERIOD HOWEVER

17    WOULD BE AN APPROPRIATE RESPONSE.  THE PROBLEM WHAT WE HAVE IS

18    YOU SAY WHAT YOU CONTEND ABOUT THE MATERIAL OMISSIONS AND

19    MISREPRESENTATIONS, WHICH YOU STATED IN RESPONSES TO OTHER

20    INTERROGATORIES AND INCORPORATED BY REFERENCE.

21              AND THEN YOU SAY AND WE CONTEND THE PROSPECTUS

22    SUPPLEMENTS DIDN'T SUFFICIENTLY COUNTERACT THOSE.

23              BUT YOU DON'T ANSWER THE QUESTION THAT'S POSED, WHICH

24    IS, WHAT'S YOUR CONTENTION.  THE PRICE OF THE STOCK DOES OR

25    DOES NOT REFLECT THE -- IF YOU WANT TO PERSIST IN THE NO, WE
```

1    DON'T THINK IT DOES REFLECT, YOU CAN DO THAT.

2              AND YOU CAN SAY, NO, IT DOES NOT.  STOP THERE.

3              YOU CAN SAY, NO, IT DOES NOT.  AND SEE WHAT WE SAID A

4    YEAR AGO IN RESPONSE TO THE MOTION TO REFRESH YOUR

5    RECOLLECTION.

6              OR YOU CAN SAY, NO, IT DOES NOT.  AND HERE'S WHY.

7              BECAUSE THESE WERE -- YOU KNOW, THESE DISCLOSURES

8    WHICH WE HAVE NOT EXAMINED ON EVERY PAGE OF THE 803

9    SUPPLEMENTS, BUT TO THE EXTENT THERE ARE CLEAR DISCLOSURES THAT

10   -- OR RELATIVELY CLEAR, THE STATED INCOME PROGRAM, AGAIN, MY

11   PERSONAL FAVORITE -- WAS IN THE DISCLOSURE BY WHICHEVER ONE OF

12   THE FOUR IT WAS.

13             HOWEVER, IT STANDS IN SHARP CONTRAST TO WHAT

14   COUNTRYWIDE WAS BULLISHLY AND PROUDLY SAYING IN ITS

15   DISCLOSURES, WHICH WOULD BE WHAT PEOPLE WOULD GO TO FIRST.

16             I MEAN, YOU CAN CUT IT WHICHEVER WAY YOU WANT TO

17   RESPOND TO THE CONTENTION, WHICH IS YES OR NO.  AND THEN YOU

18   CAN EXPLAIN AND --

19             MR. BENDELL:  I THINK, YOUR HONOR, SO LONG AS WE

20   MAINTAIN THE ABILITY TO QUALIFY THE ANSWER SUCH THAT WE'RE NOT

21   BOXED INTO AN ALL YES OR ALL NO ANSWER, WHICH IS ONE OF THE --

22   I THINK ONE OF THE PROBLEMS WITH THE INTERROGATORY, WHETHER YOU

23   WANT TO CALL IT VAGUENESS, WHETHER YOU WANT TO CALL IT

24   COMPOUNDNESS, THERE'S JUST A LOT --

25             THE COURT:  IF YOU WANT TO CALL IT VAGUENESS, DO IT

1    IN THE FIRST RESPONSE BECAUSE YOU, AGAIN, MAY HAVE A WAIVER

2    PROBLEM.

3              MR. BENDELL:  YES.

4              THE COURT:  I THINK YOUR COMPOUNDNESS MAY COVER IT.

5    ALTHOUGH I REALLY DON'T LIKE COMPOUND OR OVERBROAD, WHICH

6    EVERYBODY THROWS IN ALL THE TIME.

7              I THINK THIS IS CLEAR ENOUGH THAT YOU CAN ANSWER.  I

8    MEAN, IF NONE OF THE INFORMATION CONTAINED IN THE PROSPECTUS

9    SUPPLEMENTS IMPACTED THE PRICE IN ANY WAY, THEN, IT'S REAL EASY

10   TO SAY, YES, WE CONTEND THAT IT DID NOT REFLECT.

11             MY GUESS IS THAT IT'S A LITTLE BIT HARD TO SAY THAT.

12   AND, SO, YOU MAY WELL HAVE TO SAY, NO, WE DON'T CONTEND THAT IT

13   DIDN'T REFLECT ANY OF THE INFORMATION IN THE -- THAT DIDN'T

14   REFLECT THE INFORMATION.  HOWEVER, WE CAN'T SAY THAT IT

15   REFLECTED ALL THE INFORMATION.  AND WE BELIEVE THAT THE MARKET

16   EFFICIENCY WAS BOLLIXED UP -- I'M SURE YOU CAN SAY THAT BETTER

17   THAN I JUST DID -- BY THE MISREPRESENTATIONS ALLEGED AND

18   OMISSIONS ALLEGED WHICH WE'VE DESCRIBED IN RESPONSE 2, 3, AND

19   5.

20             MR. BENDELL:  YOUR HONOR, I THINK WE CAN PROVIDE A

21   SUPPLEMENTAL RESPONSE --

22             THE COURT:  ALL RIGHT.  HOW QUICKLY?

23             MR. BENDELL:  -- PROVIDE ADDITIONAL INFORMATION.

24             TEN DAYS.

25             THE COURT:  IS THAT ADEQUATE?

```
 1              MR. LEFLER:  WELL, I WAS HOPING FOR FRIDAY.  WE ASKED

 2    THIS QUESTION ON FEBRUARY 8TH.  WE GAVE --

 3              THE COURT:  HOW ABOUT NEXT MONDAY OR TUESDAY BY HIGH

 4    NOON?

 5              MR. LEFLER:  I CAN LIVE WITH THAT.

 6              THE COURT:  MONDAY.

 7              MR. BENDELL:  IF WE CAN HAVE UNTIL TUESDAY, YOUR

 8    HONOR, TO DO THE INTERNAL CONSULTATION IT WILL TAKE TO RESPOND,

 9    I WOULD APPRECIATE IT.

10              THE COURT:  TUESDAY AT NOON?

11              MR. BENDELL:  YES, YOUR HONOR.

12              MR. LEFLER:  AND WHAT ABOUT THE FOLLOW-UP CONFERENCE

13    WITH THE COURT?

14              THE COURT:  I'M GOING TO SET THAT IN JUST A MINUTE.

15              MR. LEFLER:  OKAY.

16              THE COURT:  I DON'T HAVE THAT ADDLED A MEMORY, MR.

17    LEFLER.

18              YOU WANT TO DO IT THE NEXT DAY AT NOON?

19              MR. LEFLER:  WEDNESDAY AT NOON WOULD BE TREMENDOUS.

20              THE COURT:  IS THAT ALL RIGHT?

21              MR. LEFLER:  THAT WOULD BE GREAT.

22              THE COURT:  WEDNESDAY AT NOON.  WE CAN DO IT

23    TELEPHONICALLY.

24              ALL RIGHT.  I AM GOING TO GRANT THE MOTION TO COMPEL

25    AND ORDER THAT THE SEC GIVE A DIRECT RESPONSE TO THE
```

1    INTERROGATORY AS TO WHAT ITS CONTENTION IS.

2              I AM NOT GOING TO ORDER THAT THE SEC CAN'T EXPLAIN

3    WHAT ITS -- THE BASIS FOR ITS CONTENTION IS OR IT CAN'T QUALIFY

4    WITH SOME EXPLANATORY WHAT IT MEANS WHEN IT SAYS YES OR NO.

5              AND THAT THE SEC WILL PROVIDE THE SECOND SUPPLEMENTAL

6    RESPONSE BY NOT LATER THAN NOON ON TUESDAY, JUNE 15, 2010.

7              THE COURT WILL HOLD -- UNLESS YOU ALL WANT TO COME

8    DOWN.  AND I DON'T KNOW WHY YOU'D WANT TO DO THAT -- A

9    TELEPHONIC CONFERENCE ON --

10             24 HOURS IS ENOUGH TIME FOR YOU TO LOOK AT IT AND SEE

11   IF IT'S THERE OR NOT THERE?

12             MR. LEFLER:  ABSOLUTELY.

13             THE COURT:  ALL RIGHT.

14             -- TELEPHONIC CONFERENCE AT NOON ON JUNE 16, 2010 TO

15   SEE IF THE ISSUES -- ISSUE PRESENTED IN THE MOTION IS NOW

16   APPROPRIATELY RESOLVED.

17             MR. BENDELL:  AND DID I UNDERSTAND YOUR HONOR

18   CORRECTLY THAT YOU'D LIKE --

19             THE COURT:  AND I WOULD LIKE YOU TO HAVE FAXED OR

20   EMAILED TO MY CHAMBERS -- AND MRS. CARSON CAN GIVE IT TO YOU.

21   IF YOU CAN FAX IT, THAT MAY BE THE EASIEST AND CLEANEST.  AND

22   SHE'LL GIVE YOU THE FAX NUMBER.

23             MR. BENDELL:  AT NOON ON TUESDAY WHEN WE SERVE THE

24   OTHER --

25             THE COURT:  SEND IT TO THEM AND PUT ME AT THE BOTTOM

1    OF THE FAX OR EMAIL CHAIN.

2              MR. BENDELL:  UNDERSTOOD.

3              THE COURT:  JUST FAX IT TO ME.  THEN I HAVE IT

4    ALREADY COPIED.  AND I CAN LOOK AT IT AND --

5              MR. BENDELL:  UNDERSTOOD, YOUR HONOR.

6              THE COURT:  ALL RIGHT.  ANYTHING FURTHER AT THIS

7    TIME?

8              MR. LEFLER:  NO, YOUR HONOR.  THANK YOU VERY MUCH.

9              THE COURT:  THANK YOU, COUNSEL.  HAVE A NICE

10   AFTERNOON.

11             THE COURT IS IN RECESS.

12             MR. BENDELL:  THANK YOU, YOUR HONOR.

13             THE COURT:  ON THIS MATTER, AT LEAST.

14             (PROCEEDINGS ADJOURNED AT 10:53 A.M.)

15

16

17

18

19

20

21

22

23

24

25

```
 1
 2                    C E R T I F I C A T E
 3
 4         I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT
 5   FROM THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
 6   ABOVE-ENTITLED MATTER.
 7
 8
 9
10   DOROTHY BABYKIN                        6/10/10
11   _____      _____
12   FEDERALLY CERTIFIED TRANSCRIBER        DATED
13   DOROTHY BABYKIN
14
15
16
17
18
19
20
21
22
23
24
25
```