JOHN M. McCOY, III, Cal. Bar No. 166244
Email:  mccoyj@sec.gov
SPENCER E. BENDELL, Cal. Bar No. 181220
Email:  bendells@sec.gov
LYNN M. DEAN, Cal. Bar No. 205562
Email:  deanl@sec.gov
SAM S. PUATHASNANON, Cal. Bar No. 198430
Email:  puathasnanons@sec.gov
PARIS A. WYNN, Cal. Bar No. 224418
Email:  wynnp@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Rosalind R. Tyson, Regional Director
Michele Wein Layne, Associate Regional Director
5670 Wilshire Boulevard, 11th Floor
Los Angeles, California 90036
Telephone:  (323) 965-3998
Facsimile:   (323) 965-3908

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>ANGELO MOZILO, DAVID SAMBOL, AND ERIC SIERACKI,<br><br>Defendants. | Case No. CV 09-3994 JFW (MANx)<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S OBJECTIONS TO EVIDENCE CITED IN DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS IN SUPPORT OF MOTIONS FOR SUMMARY JUDGMENT**<br><br>Date:    August 30, 2010<br>Time:   1:30 p.m.<br>Place:   Courtroom 16<br>           (Hon. John F. Walter) |

<u>Separate Statement Paragraph 3</u>: Objection to the incomplete quotation from the underlying document, which must be fairly read in its entirety so to not be misleading. Fed. R. Evid. 106.

<u>Separate Statement Paragraph 13</u>: Objection to Professor Grundfest's foundation for asserting that every offering was accompanied by the filing of a prospectus supplement, when Professor Grundfest has not actually performed any review upon which to base such a conclusion. Fed. R. Evid. 701.

<u>Separate Statement Paragraph 15</u>: Objection to Professor Grundfest's attempt to characterize the contents of every prospectus supplement, when he has not actually reviewed each supplement. Fed. R. Evid. 701.

<u>Separate Statement Paragraph 17</u>: Objection to Defendants' purported paraphrase of Kurzban's testimony, which they do not actually set forth in the Statement. Accordingly, there is no foundation for the asserted fact.

<u>Separate Statement Paragraph 23</u>: Objection to the underlying evidence, consisting of the Culp Report and excerpts from the Culp deposition. The Culp Report is inadmissible hearsay, and while the deposition citation authenticates the document, it does not subscribe or adopt all the opinions set forth therein, and the contents of the report are hearsay. Fed. R. Evid. 801, 802. The assertion that rating agencies downgraded ratings on hundreds of securities issued by the industry is not relevant because the industry's conduct is not at issue. Fed. R. Evid. 401 and 402. Finally, the citation to Culp's deposition testimony (Culp SEC Depo. Tr. 125:21-24 (July 23, 2010)) ("what triggered the turmoil in the RMBS market was the change in housing prices, not the dramatic weakening of underwriting standards"); is not relevant to and fails to provide evidentiary support for the stated fact. Fed. R. Evid. 401 and 402.

<u>Separate Statement Paragraph 24</u>: Objection to the Culp Report which is inadmissible hearsay, and the cited deposition testimony only authenticates the document, but does not subscribe or adopt all of the opinions set forth therein.

1 | Fed. R. Evid. 801, 802.  Further object to the citation to the Culp Report which
2 | lacks foundation because it is not supported by sufficient facts and data, and
3 | therefore not admissible under Fed. R. Evid. 702.

4 |     <u>Separate Statement Paragraph 25</u>:  Objection to the Culp Report which is
5 | inadmissible hearsay.  Fed. R. Evid. 801, 802.  Objection to the Foster deposition
6 | testimony (Foster SEC Depo. Tr. 71:25 – 72:4 (July 12, 2010)) ("Q:  And do you
7 | recall, was it your impression at the time that Countrywide's inability to secure
8 | these replacement repo lines was due to Countrywide specific?  A:  No."); (Foster
9 | SEC Depo. Tr. 73:6-3, 23-25 (July 12, 2010)):  "Q:  So did you ever get the
10 | impression that Countrywide was being singled out?  A:  Absolutely not.  Q:
11 | Okay.  A:  In fact, if I can add, I was told that we were one on a – at the top of a
12 | laundry list of companies that were approaching them for credit support….we were
13 | one of their best customers.  They considered us to be the highest quality of their
14 | customers.") on the ground that it constitutes improper opinion testimony based on
15 | the witness's "impressions" of events without any underlying foundation for those
16 | opinions, such as the witness's perception of a particular event.  Fed. R. Evid. 701.

17 |     <u>Separate Statement Paragraph 26</u>:  Objection to the Culp Report which is
18 | inadmissible hearsay.  Fed. R. Evid. 801, 802.  Objection to the Foster deposition
19 | testimony (Foster SEC Depo. Tr. 66:25-67:15 (July 12, 2010)):  "Q:  I see.  And
20 | then in the last sentence of --of that paragraph it says:  'Mr. Mozilo noted that the
21 | problems were not isolated to the company but were being experienced by other
22 | major market participants, such as Wachovia Corporation.'  A:  Yes.  Q:  Do you
23 | recall whether you were observing those events as well?  [objection omitted]  A:
24 | Yes.  As I said, I think several times in my discussion, I was observing -- I was
25 | observing across the board that these events were impacting the industry at large.")
26 | on the ground that it constitutes inadmissible opinion testimony purportedly
27 | discussing unidentified and vague "events" that were having an undefined
28 | "impact" without any factual basis for the observation.  Fed. R. Evid. 701.

<u>Separate Statement Paragraph 27</u>:  Objection to the Culp Report which is inadmissible hearsay which is not cured by a citation to deposition testimony identifying the report as authentic.  Fed. R. Evid. 801, 802.  Objection to the Foster deposition testimony (Foster SEC Depo. Tr. 65:25 – 66:7 (July 12, 2010)):  "Q: Do you recall anyone during this time period expressing to you that contagion from subprime to prime space was due to the credit quality of Countrywide's loans?  A: No.  There was a general contagion in the market --  Q:  And --  A:  -- not specific to Countrywide.") on the ground that there is no factual foundation provided and it consists of inadmissible lay opinion testimony about an unidentified and vague "contagion in the market," so that the danger of confusion and unfair prejudice substantially outweighs any probative value.  Fed. R. Evid. 701 and 403.

<u>Separate Statement Paragraph 42</u>:  Objection to Exhibit 221, described as a July 26, 2005 Q2 2005 Countrywide Financial Corporation Earnings Conference Call Transcript, because in fact Exhibit 221 is titled "CFC Q1-2007 Countrywide Financial Corporation Earnings Conference Call  and the document identified in the Lefler Declaration as Exhibit 221 does not support the proffered fact.

<u>Separate Statement Paragraph 43</u>:  Objection to the excerpt from the 2006 Countrywide Form 10-K on the grounds that it is hearsay being offered to prove the truth of the matter asserted concerning whether the allowance for loan losses was the best estimate that could be made.  Fed. R. Evid. 801, 802.

<u>Separate Statement Paragraph 55</u>:  Objection to the citation to the Brendler deposition testimony (Brendler Depo. Tr. 191:15-193:17 (June 25, 2010)) (testimony confirming that the table in Lefler Decl. Ex. 114 (SEC Ex. 513) included information on FICOs, CLTVs, and reduced documentation); (Brendler Depo. Tr. 225:10-23 (June 25, 2010)) (testimony indicating that, using data underlying the table in SEC Ex. 513, it would be possible to determine what percentage of loans of CLTV's of 100-plus and a weighted average FICO below

660) on the ground that the testimony is mischaracterized in the description provided by defendants and the underlying testimony speaks for itself.

<u>Separate Statement Paragraph 56</u>:  Objection to Exhibit 76 (September 2006 Slides) and Exhibit 77 (September 2006 presentation) which are hearsay documents offered to prove the truth of the factual assertion that certain information was presented to investors, that have not been authenticated and no foundation has been laid for their admission into evidence by a witness with personal knowledge of the events that occurred at the presentation.  Fed. R. Evid. 801, 802 and 602.  While Mr. Lefler's Declaration authenticates the documents pursuant to the parties' stipulation regarding authenticity, Mr. Lefler lacks any basis in personal knowledge that would allow him to lay a foundation that the information was presented to investors.  Fed. R. Evid. 701.

<u>Separate Statement Paragraph 57</u>:  Objection to Exhibit 128A (February 9, 2006 Email re:  American Securitization Forum) is a hearsay document offered to prove the truth of the factual assertion that John McMurray made a presentation at a certain date and time, which has not been properly authenticated and fails to establish the offered fact.  Fed. R. Evid. 801, 802 and 602.

<u>Separate Statement Paragraph 59</u>:  Objection to characterization of the McMurray deposition testimony concerning "successive presentations" which mischaracterizes the underlying evidence and suggests that there was more than one investor forum, whereas McMurray testified:  "A:  This appears to be a transcript for an investor forum that was held in New York in September of '06.  Q:  And that was an investor forum where you made a presentation?  A:  Well, I recall making two presentations.  One day was –one day was for equity-type investors and a second – I think it was a second day or a second series of presentations for fixed-income-type investors."

Objection to Exhibit 74 (Thomson Conference Call Transcript) on the grounds that it is a hearsay document offered to prove the truth of the matter

1 asserted concerning disclosures made by McMurray which has not been properly
2 authenticated by a witness with personal knowledge of the contents of the
3 conference call. Fed. R. Evid. 801, 802 and 602.

Objection to Exhibits Exhibit 76 (September 2006 Slides) and Exhibit 77 (September 2006 presentation) which are hearsay documents offered to prove the truth of the factual assertion that certain information was presented to investors, that have not been authenticated and no foundation has been laid for their admission into evidence by a witness with personal knowledge of the facts involved in the preparation of the documents. Fed. R. Evid. 801, 802 and 602.

Objection to Exhibit 84 (May 2007 Investor Forum Transcript) which is a hearsay document offered to prove the truth of the factual assertion that certain information was presented to investors by McMurray which has not been properly authenticated by a witness with personal knowledge of the contents of the proceedings held at the investor forum. Fed. R. Evid. 801, 802 and 602.

<u>Separate Statement Paragraph 75</u>: Objection to the Lehn Report on the grounds that the report is hearsay and lacks foundation under Fed. R. Evid. 701, 801, and 802 to the extent Lehn suggests the trading plan "was designed" to effectuate the sale of a number of shares other than what is reflected in the text of the plan itself. The plan is the best evidence of its own contents. Fed. R. Evid. 106.

<u>Separate Statement Paragraph 76</u>: Objection to the Lehn Report on the grounds that the report is hearsay and lacks foundation under Fed. R. Evid. 701, 801, and 802 to the extent Lehn suggests the trading plan "was designed" to effectuate the sale of a number of shares other than what is reflected in the text of the plan itself. The plan is the best evidence of its own contents. Fed. R. Evid. 106.

<u>Separate Statement Paragraph 77</u>: Objection to the Lehn Report on the grounds that the report is hearsay and lacks foundation under Fed. R. Evid. 701,

5

1  801, and 802 to the extent Lehn suggests the trading plan "was designed" to
2  effectuate the sale of a number of shares other than what is reflected in the text of
3  the plan itself.  The plan is the best evidence of its own contents.  Fed. R. Evid.
4  106.
5         <u>Separate Statement Paragraph 78</u>:  Objection to the Lehn Report on the
6  grounds that the report is hearsay and lacks foundation under Fed. R. Evid. 701,
7  801, and 802 to the extent Lehn suggests the trading plan "was designed" to
8  effectuate the sale of a number of shares other than what is reflected in the text of
9  the plan itself.  The plan is the best evidence of its own contents.  Fed. R. Evid.
10 106.
11        <u>Separate Statement Paragraph 79</u>:  Objection to the Lehn Report on the
12 grounds that the report is hearsay and lacks foundation under Fed. R. Evid. 701,
13 801, and 802 to the extent Lehn suggests the trading plan "was designed" to
14 effectuate the sale of a number of shares other than what is reflected in the text of
15 the plan itself.  The plan is the best evidence of its own contents.  Fed. R. Evid.
16 106.
17        <u>Separate Statement Paragraph 88</u>:  Objection to the Mozilo deposition
18 testimony (Mozilo NYF Depo. Tr. 29:5-9 (January 26, 2010)) ("I was advised by a
19 financial advisor hired by the company, because of my age, that I should begin to
20 diversify, and I started that process in 2002.") on the grounds that it is hearsay
21 evidence concerning purported advice provided to Mozilo.  Fed. R. Evid. 801, 802.
22        <u>Separate Statement Paragraph 96</u>:  Objection to the Bow deposition
23 testimony ((Bow SEC Depo. Tr. 89:16-19 (July 16, 2010)) ("Q: [W]as there ever
24 an occasion that you sought outside counsel's advice with respect to Mr. Mozilo's
25 trading?  A: Yes."); *id.* at 2644 (Bow SEC Depo. Tr. 91:7-93:4 (July 16, 2010))
26 ("Q: [D]oes looking at this . . . refresh your recollection . . . that you sought advice
27 from Mr. O'Sullivan with respect to Mr. Mozilo's December trading plan?  A:
28 Yes. . . . Q: [I]s there any circumstance under which, if an outside lawyer told you .

Case 2:09-cv-03994-JFW-MAN   Document 243   Filed 08/16/10   Page 8 of 19   Page ID
#:10491

. . Mr. Mozilo cannot enter into a trading plan right now, that you would have approved that plan? . . . A: No.") on the grounds that it is not revelant, given that it does not indicate what issue relating to the December 2006 was discussed.  Fed. R. Evid. 401, 402.

<u>Separate Statement Paragraph 97</u>:  Objection to the Lehn Report on the grounds that the report is hearsay and inadmissible under Fed. R. Evid. 801, 802. Defendants' citation to a portion of Lehn's deposition in which he identifies the report merely authenticates it as his report but does not otherwise lay a foundation or state any expert opinion.

<u>Separate Statement Paragraph 107</u>:  Objection to the Lehn Report on the grounds that the report is hearsay and inadmissible under Fed. R. Evid. 801, 802, and the proffered opinion is speculative and not based upon sufficient facts and data such that it is conclusory and beyond the scope of proper expert testimony. Fed. R. Evid. 702.

<u>Separate Statement Paragraph 108</u>:  Objection to Conners SEC Investigative Transcript ((Conners SEC Inv. Depo. Tr. 96:12-15 (September 22, 2008)) ("[T]raditionally there's been a floor in the prior plans. . . . And I think it was Angelo saying he didn't want to give the stock away."); *id.* at 2664-65 (Conners SEC Inv. Depo. Tr. 96:22-97:6 (September 22, 2008)) ("Q: Did you have any discussions with Mr. Mozilo to try to persuade him to not include the floor?  A: I probably recommended to him five or six times that do we really need to have a floor, because we had more time to maneuver on these shares.  Q: And other than saying that he didn't want to give the stock away, did Mr. Mozilo give you any other reasons why he wanted the floor in the plan?  A: No.  It was really just, I don't want to sell below 28 or 29, whatever the floor was at the time.") on the grounds that it is hearsay and lack of foundation because the witness is speculating about the substance of a conversation with Mozilo without actually recalling a

specific conversation where a particular statement was made. Fed. R. Evid. 801, 802 and 602.

Separate Statement Paragraph 112: Objection to Exhibit 189 (June 21, 2007 Email) which is hearsay that has not been properly identified or authenticated, and which does not support the proffered fact since the email discusses an estimate of a possible payment and explicitly states: "We won't know the exact amount until the end of the month." Fed. R. Evid. 801, 802.

Separate Statement Paragraph 118: Objection to Bartlett SEC Testimony ((Bartlett SEC Depo. 158:6-10 (June 3, 2010)) ("[I]t's the best estimate of management's expectations at that time.") on the ground that defendants' have provided an incomplete quote, and the actual testimony establishes that the witness was speculating about his belief, as he testified: "I believe it's the best estimate of management's expectations at that time." The witness's beliefs are not relevant to the issues and lack adequate foundation. Fed. R. Evid. 801, 802, 401, 402, 710 and 602.

Separate Statement Paragraph 119: Objection to Exhibit 192 (Earnings Forecast, Corporate Financial Planning, January 10, 2007) on the grounds that it is a hearsay document offered to prove the truth of the matter asserted therein. Fed. R. Evid. 801, 802.

Separate Statement Paragraph 140: Objection to Defendants' citation to the LaCour-Little deposition testimony (LaCour-Little SEC Depo. Tr., 97:7-100:14 (July 28, 2010) "Q: In my hypothetical every other factor's the same, CLTV, everything is the exact same. As a matter of fact, in my hypothetical we can say that, you know, they were approved at both places. Two identical universes, except in one universe one company has a 720 cutoff and therefore 50 percent exception rate; second company has a 700 percent cutoff – 700 FICO cutoff and therefore zero percent exception rate. Is there any difference in the credit risk between – those two companies have for those mortgages? [objection omitted] A:

8

1  I don't see a difference as you frame the – the hypothetical.  Q:  So one company
2  would show a 50 percent exception rate, the other one would show a zero percent
3  exception rate, yet they would have identical credit risks in this hypothetical?
4  [objection omitted]  A:  Pardon me. . . . . I – I find it difficult to respond to the
5  hypothetical.  Q:  Why do you find it difficult?  A:  Because credit risk is a
6  function of so many other variables, and you would never really have this sort of
7  structure where you had two companies that were absolutely identical.  Q:  I've
8  seen some of your mathematical work, Doctor.  It appears that you're quire adept
9  at solving very elaborate calculations.  In this hypothetical, all of the variables are
10 constant, they're the same so we're just – there's only one variable that changes,
11 the FICO – I'm sorry, they're all the same.  The only thing that is changing is the
12 level, the cutoff level for the guidelines of FICO score at the two companies.  So
13 based on that, does that clear everything up and would allow you to say that the
14 credit risk of the loans originated by company one, which has a 50 percent
15 exception rate, and company two, which has a zero percent exception rate, are
16 identical? [objection omitted]  A:  I guess your hypothetical is okay.  Q:  By
17 'okay' you mean – A:  I guess you're right, that they would have the same credit
18 risk.  Q:  I want to throw in a second hypothetical.  Let's take that exact same
19 universe.  Let's add a third company.  And that third company has loans originated
20 that have all the same variables constant again.  The only thing that changes is the
21 FICO scores of its borrowers, and its FICO scores of its borrowers are 680 across
22 the board.  Everyone is 680, and the cutoff at that company is also 680, so there's a
23 zero exception rate.  Now, in your opinion, does the company with the 680 cutoff
24 that has a zero percentage exception rate have more or less credit risk than the
25 company – the first company that has a 50 percent exception rate? [objection
26 omitted]  A:  So if we believe the only determinant is the credit score, then lower
27 credit scores would indicate greater risk.  A:  So the third company would have a
28 greater – A:  Higher credit risk, yeah.  Q:  Even though it has a zero percent

1  exception rate?  A:  Right.") on the grounds that the questions posed at the
2  deposition involved an incomplete hypothetical which called for speculation so the
3  testimony was not based on sufficient facts and date to qualify as an admissible
4  expert opinion under Fed. R. Evid. 702.  The underlying testimony does not
5  support the proffered fact.

6 <u>Separate Statement Paragraph 141</u>:  Objection to Exhibit 237 (CFC Investor
7  Presentation held March 30, 2004) on the grounds that no proper foundation has
8  been laid for the admissibility of the document which is hearsay, but is being
9  offered for the truth of the matter asserted that Countrywide's "exception pricing
10 system" was one of its "Loan Production Growth Strategies", nor is there any
11 foundation for the assertion that it was actually presented at the referenced event
12 Fed. R. Evid. 701, 801, 802, 401, 402, and 602.

13 <u>Separate Statement Paragraph 143</u>:  Objection to Exhibit 22 (Transcript of
14 CFC Analyst Meeting held on May 24, 2005) and the Lefler Declaration because
15 the transcript is inadmissible hearsay being offered for the truth of the matter
16 asserted, and a proper foundation for the admission of the document has not been
17 laid by defendants in the Lefler Declaration.  Fed. R. Evid. 801, 802, 401, 402, and
18 602.

19 <u>Separate Statement Paragraph 146</u>:  Objection to Exhibit 76 (Transcript of
20 CFC Fixed Income Investor Forum held September 13, 2006) on the grounds that
21 the document is inadmissible hearsay being offered for the truth of the matter
22 asserted therein, but defendants have not laid a proper foundation for the admission
23 into evidence of the transcript.  Fed. R. Evid. 801, 802, 401, 402, and 602.

24 <u>Separate Statement Paragraph 147</u>:  Objection to Exhibit 243 (PowerPoint
25 Presentation from CFC Subprime Residential Mortgage Lending Presentation in
26 September 2006) on the grounds that the document is inadmissible hearsay being
27 offered for the truth of the matter asserted concerning Countrywide's relative
28 position as a subprime lender, defendants have not laid a proper foundation for

1 admission of the document into evidence by a person with personal knowledge of
2 the presentation, and the probative value of the document is substantially
3 outweighed by the danger of confusion and unfair prejudice because defendants are
4 suggesting that this information was transmitted outside of Countrywide when
5 there is no evidence to support that assumption.  Fed. R. Evid. 701, 801, 802, 602,
6 and 403.

7 <u>Separate Statement Paragraph 148</u>:  Objection to Exhibit 241 (Transcript
8 from American Financial Services Association Finance Industry Conference for
9 Fixed Income Investors held May 17, 2006) on the grounds that the transcript is
10 hearsay and therefore inadmissible under Fed. R. Evid. 801, 802, but is being
11 offered for the truth of the matter, specifically, the particular quoted passage
12 concerning Countrywide's purported disclosures.

13 <u>Separate Statement Paragraph 149</u>:  Objection to Exhibit 242 (PowerPoint
14 Presentation from CFC Subprime Residential Mortgage Presentation on June 7,
15 2006) on the grounds that defendants have failed to provide a foundation for
16 admission of this document by a witness with personal knowledge of their
17 preparation and the contents of the presentation, including the information
18 presented at the time.  The slides are inadmissible hearsay being offered for the
19 truth of the matter asserted, specifically that certain disclosures were made on the
20 date in question, in the forum in question.  Fed. R. Evid. 602 and 801, 802.

21 <u>Separate Statement Paragraph 156</u>:  Objection to Sieracki Declaration ¶ 9 in
22 which the witness makes a conclusory assertion that lacks foundation and consists
23 of inadmissible lay opinion testimony concerning operations at Countrywide
24 without providing an evidentiary basis, including explanation of the differences
25 between "prime," "subprime," and "nonprime" classifications, or the executives
26 who allegedly made such classifications and the manner in which they were
27 communicated.   Fed. R. Evid. 602, 701, and 403.

28

  <u>Separate Statement Paragraph 164</u>: Objection to Sieracki Declaration ¶ 31 in which the witness makes unfounded assertions concerning the preparation of Form 10-Ks about which he apparently lacked personal knowledge because his assertions do not comport with the evidence from those with personal knowledge about the process and how it worked. Fed. R. Evid. 602 and 403.

  <u>Separate Statement Paragraph 167</u>: Objection to Sieracki Declaration ¶¶ 14, 16-17, 25-27, 35, 38, 40 on the grounds that the conclusion that Legal was "integrally involved in the disclosure process" and "knew it was responsible for obtaining certifications" is inadmissible lay opinion testimony and Sieracki lacks personal knowledge concerning Legal's responsibilities and knowledge of its responsibilities. Fed. R. Evid. 602, 701, and 403.

  <u>Separate Statement Paragraph 168</u>: Objection to Sieracki Declaration ¶ 40 which consists of Sieracki's self-serving assertion about the Form 10-K preparation process at Countrywide that is not otherwise corroborated by competent evidence about what Sieracki "would not and did not" do, as well speculation about Legal's actions. Fed. R. Evid. 602.

  <u>Separate Statement Paragraph 180</u>: Objection to Sieracki's proffered calculation which purports to assign an arbitrary dollar value of over $20 million as a quantification of the "loss in value" that Sieracki "experienced" because he held onto his shares as Countrywide's stock price declined. There is no factual basis proffered to support this arbitrary calculation, it is not being offered by any fact or expert witness, and no explanation is given as to why the calculation may or may not represent losses incurred, so that any minimal probative value is substantially outweighed by the likelihood of confusion and unfair prejudice. Fed. R. Evid. 602, 701, and 403.

  <u>Separate Statement Paragraph 181</u>: Objection to the proffered fact because the underlying evidence does not support the defendants' statement, to the extent that statement can even be plainly understood. Defendants assert that a "single

1  document" is identified in the SEC's Response to Interrogatory No. 2, and then cite
2  to one paragraph of the Response to the Interrogatory, which in fact continues for
3  several pages.  The Response begins on page 6, line 24 and continues to page 14,
4  line 3, and citations are made to numerous documents in that response, such as a
5  December 7, 2006 email circulated by Mozilo to Sieracki, among others (Response
6  at 9:14-10:5), materials distributed at a March 12, 2007 Risk Management
7  Committee Meeting which Sieracki attended (*id*. at 10:6-10:18), events at a June
8  28, 2005 Risk Management  Committee Meeting Sieracki attended (*id*. at 10:26-
9  11:5), and numerous documents cited later in the answer, including Testimony
10 Exhibits 87, 92, 145, 221, 244, 277, 281, 53, 618, 1264, 1269, 1270, 1271, 1311,
11 and 1314, and other documents (*id*. at 13:27-14:2).  The proffered fact lacks any
12 factual basis and is not relevant or competent evidence.  Fed. R. Evid. 401.

13       Separate Statement Paragraph 182:  Objection because the underlying
14 evidence does not support the proffered fact.  Exhibit 10 is Countrywide' Form 10-
15 K for the year ended December 31, 2005, while the proffered fact refers to "June
16 28, 2005 minutes" that are otherwise unidentified.  The underlying evidence is not
17 relevant to the proffered fact.  Fed. R. Evid. 401.

18       Separate Statement Paragraph 184:  Objection to the proffered fact which
19 selectively quotes from and mischaracterizes the underlying evidence, Exhibit 260
20 (June 22, 2006 CRC Meeting Minutes).  The content of the entire document should
21 be admitted into evidence and augment the proffered fact.  Fed. R. Evid. 106.  As
22 stated, the proffered fact concerning "overall credit quality has been very high and
23 in line with model expectations" and "all exposures were well within tolerance" is
24 not supported by the evidence because of the selective quotation, which omits that
25 the Bank's loss models had been under-predicting delinquencies, first liens had
26 been underperforming at unexpected rates, Countrywide had $146 million of
27 potential losses on $464 million in outstanding principal due to repurchase requests
28 on securitizations and asset sales, and recast speeds on PayOption loans had been

1 increasing.  The danger of unfair confusion outweighs the probative value of the
2 proffered fact.  Fed. R. Evid. 403.  The underlying document speaks for itself.

   <u>Separate Statement Paragraph 185</u>:  Objection to the proffered fact which is not supported by the evidence cited and is unintelligible.  Fed. R. Evid. 403.  The underlying document, an email from Mozilo to Sieracki, speaks for itself.

   <u>Separate Statement Paragraph 186</u>:  Objection to the proffered fact which purports to characterize a memorandum written by Mozilo, but in fact mischaracterizes the document.  The proffered fact is not supported by the evidence and is unfairly prejudicial.  Fed. R. Evid. 403.  The underlying document speaks for itself.

   <u>Separate Statement Paragraph 189</u>:  Objection to the proffered fact which is a portion of a statement in a document, Exhibit 262, which is hearsay, but the selective quote is being proffered for the truth of the matter that "product introductions and guidelines have not been implemented indiscriminately."  The proffered fact is not supported by the evidence and is unfairly prejudicial.  Fed. R. Evid. 403.  The underlying document speaks for itself.

   <u>Separate Statement Paragraph 190</u>:  Objection to the proffered fact which proffers an argument and characterization about the contents of Exhibit 262 as setting forth "numerous steps undertaken by Countrywide to manage guidelines and risk" in December 2006. Defendants' characterizations and arguments are not facts.  Fed. R. Evid. 401.  The underlying document speaks for itself.  Fed. R. Evid. 106.

   <u>Separate Statement Paragraph 191</u>:  Objection to the proffered fact which is based upon Sieracki's self-serving declaration ¶¶ 52-54, on the grounds that Sieracki is proffering inadmissible lay opinion testimony on the ultimate facts in the case, specifically whether emails from Mozilo informed Sieracki that Countrywide's loan origination standards were different than those disclosed in Countrywide's Forms 10-K, as well as other self-serving inferences that Sieracki

wishes to derive from various unidentified emails.  Sieracki's declaration is inadmissible lay opinion testimony and his opinion about the inferences to be drawn from the emails is not relevant and invades the province of the finder of fact.  Fed. R. Evid. 701 and 401.  The best evidence is the content of the emails, and the documents speak for themselves.  Fed. R. Evid. 106.  Sieracki's conclusions are also inadmissible hearsay.  Fed. R. Evid. 801 and 802.

<u>Separate Statement Paragraph 192</u>:  Objection because the proffered fact misstates and mischaracterizes the underlying evidence, which consists of Sieracki Declaration ¶ 43 and Exhibit 263 (January 2, 2007 Email from McMurray).  Defendants' proffered fact is vague and incomplete, and as such any relevance is outweighed by the danger of confusion and unfair prejudice.  Fed. R. Evid. 403.  The underlying email is the best evidence of McMurray's responses in January 2007 and his explanation, and the entire email should be considered.  Fed. R. Evid. 106.

<u>Separate Statement Paragraph 193</u>:  Objection because the proffered fact is incomplete as stated and not supported by the evidence cited, and the best evidence of the contents of Exhibit 264 (January 30, 2007 Press Release) is the document itself.  Fed. R. Evid. 106.

<u>Separate Statement Paragraph 194</u>:  Objection because the proffered fact is incomplete as stated and not supported by the cited evidence, and the best evidence of the contents of the January 30, 2007 analyst conference call is the transcript of the call that has been properly authenticated such as Exhibit 88, or testimony from a participant in the call.  Fed. R. Evid. 106, 602.  The transcript is hearsay.  Fed. R. Evid. 801.

<u>Separate Statement Paragraph 195</u>:  Objection to the proffered fact because it is incomplete as stated and not supported by the cited evidence, and the best evidence of the contents of the January 30, 2007 conference call is a transcript of the call that has been properly authenticated such as Exhibit 88, or testimony from

a participant in the call.  Fed. R. Evid. 106, 602.  The proffered fact is unintelligible and a partial quote and as such, the danger of confusion outweighs its probative value.  Fed. R. Evid. 403.

<u>Separate Statement Paragraph 196</u>: Objection to the proffered fact because it is incomplete as stated and purports to characterize "many reasons" for "expected delinquencies" disclosed in Countrywide's 2006 Form 10-K, Exhibit 4, which is not supported by the cited evidence.  The best evidence of the disclosures made in the Form 10-K is the document itself.  Fed. R. Evid. 106.

<u>Separate Statement Paragraph 198</u>: Objection to the underlying evidence, Sieracki Declaration ¶¶ 11-13, which consists of Sieracki's self-serving statements made without sufficient factual foundation concerning how Sieracki can opine on what was "well known" to the public, and who the public is, and what "the industry" disclosures consist of and how they are relevant to Countrywide's disclosures.  Sieracki's statements in his declaration are not based on personal knowledge and are speculative lay opinions that are inadmissible.  Fed. R. Evid. 602, 701.  Sieracki's statements are legal conclusions that are not relevant evidence, and he has no expertise for making such opinions.  Fed. R. Evid. 401, 602, 702.

<u>Separate Statement Paragraph 199</u>: Objection to the underlying evidence, Sieracki Declaration ¶ 12, and Sieracki's self-serving statement that he "believed" that certain documents were "accessible to Countrywide investors" on the grounds that he provides no factual basis for his belief, fails to disclose when or how he arrived at the belief, and fails to explain how this belief is relevant to the issues in the case, so that it is inadmissible lay opinion testimony that is not relevant.  Fed. R. Evid. 602, 701, 401.

<u>Separate Statement Paragraph 201</u>: Objection because the proffered fact is not supported by the cited evidence, Exhibit 265 (February 8, 2006 Email from Mike Udovic).  Defendants' proffer that Udovic "expressly informed Sieracki that

detailed information about Countrywide's loans and loan standards had been and was being made publicly available through presentations to investors," whereas the cited evidence Exhibit 201 is an email in which Udovic writes about "Pay-Option ARM Disclosure by Secondary Marketing," and not generally about Countrywide's loans and loan standards.  The best evidence of the contents of the email is the document itself.  Fed. R. Evid. 106.  Defendants' proffer further asserts that "never advised Sieracki that this type of information was required to be in the 10-K," but this sentence fragment does not identify who should have advised Sieracki, or establish a foundation that Sieracki undertook to inquire about what he needed to do to comply with the disclosure requirements, and as such is unintelligible and not relevant, and any relevance is outweighed by the danger of confusion.  Fed. R. Evid. 401, 403.

<span style="padding-left:2em"></span><u>Separate Statement Paragraph 202</u>:  Objection to the proffered fact and underlying evidence, which consists solely of Sieracki's self-serving declaration.  The proffered fact refers vaguely to "this type of information" that was required to be in the Form 10-K, but fails to specify what "this type" of information consists of, and so is vague and irrelevant.  Fed. R. Evid. 401.  The proffered fact and cited evidence fails to include the type of information that legal counsel advised Sieracki was required to be disclosed in the Form 10-K, which is a foundation for his lay opinion testimony that he was not so advised, and therefore there is no factual foundation and the cited evidence is inadmissible lay opinion testimony.  Fed. R. Evid. 602, 701.

<span style="padding-left:2em"></span><u>Separate Statement Paragraph 204</u>:  Objection because the proffered fact is not supported by the cited evidence, Exhibit 269 (February 17, 2006 memorandum from Laurie Milleman to David Sambol, Eric Sieracki, Kevin Bartlett, Subject: Draft 10-K), which is unauthenticated hearsay.  The cited evidence is a memorandum which states:  enclosed for your review is a draft of Countrywide's Form 10-K for the year ended December 31, 2006, but the exhibit is incomplete

because the draft is not included. The memorandum is dated "February 17, 2006," but requests comments by "February 15, 2007," so that any comments can be incorporated into the draft sent to the Board of Directors on "February 16, 2007." It is unclear whether Countrywide began preparing its Form 10-K for the year ended December 2006, in February 2006, and then worked on it for a year until February 2007, or the memorandum was sent out after the Form 10-K was presented to the Board of Directors. The confusion with the dates on the document raises questions concerning the authenticity and reliability of the document, which is hearsay. Sieracki does not state in his declaration that he received the memorandum on or about February 17, 2006 – or at any other time. The underlying document is inadmissible hearsay. Fed. R. Evid. 801, 802. To the extent defendants rely on a portion of the document, the best evidence of the contents of the document is the memorandum, not the proffered fact. Fed. R. Evid. 106. Further objection to the proffered fact which is vague as to "incorporating McMurray's suggestions" because it does not identify the content of those suggestions, and in fact the memorandum states only: "We are still working to make sure that the appropriate points from the outline that John McMurray prepared for the earnings teleconference." The proffered fact is not supported by the cited evidence. Fed. R. Evid. 401.

Dated:  August 16, 2010                    Respectfully submitted,


                                           /s/ John M. McCoy III
                                           John M. McCoy III
                                           Spencer E. Bendell
                                           Lynn M. Dean
                                           Sam S. Puathasnanon
                                           Paris A. Wynn
                                           Attorneys for Plaintiff
                                           Securities and Exchange Commission